[No. 19423. *En Banc.* July 20, 1926.]

ANNA HEIMAN, *Respondent,* v. J. KLOIZNER, *Appellant.*[1]

[1] MUNICIPAL CORPORATIONS (381, 389)—AUTOMOBILES—EXCESSIVE SPEED—EVIDENCE—SUFFICIENCY. Excessive speed as the cause of a collision between automobiles at a street intersection is not shown by the testimony of an invited guest, riding in the car, that it was going twenty-five or thirty miles an hour shortly before reaching the intersection, but was proceeding slowly at the time of the impact.

[2] NEGLIGENCE (23)—IMPUTED NEGLIGENCE—DRIVER'S NEGLIGENCE IMPUTABLE TO GUEST. While a driver of an automobile is not required to exercise as high a degree of care towards an invited guest as he would in case of a passenger for hire, he is required to exercise a higher degree of care than he would afford a trespasser and it is for the jury to determine whether he was mindful of the life and limb of the guest and did not wrongfully expose her to additional peril.

Appeal from a judgment of the superior court for King county, Lindsley, J., entered May 1, 1925, upon findings in favor of the plaintiff, in an action for personal injuries, sustained in an automobile collision, tried to the court. Reversed.

*Reynolds, Ballinger & Hutson,* for appellant.
*Baxter, Jones & Hughes,* for respondent.

PARKER, J.—The plaintiff, Mrs. Heiman, commenced this action in the superior court for King county, seeking recovery of damages for personal injuries claimed to have been suffered by her as the result of the negligent driving by the defendant Kloizner of his automobile, while she was riding therein with him as his invited guest in the city of Seattle. A trial upon the merits before the court sitting without a jury resulted in findings and judgment awarding recovery to plain-

[1]Reported in 247 Pac. 1034.

tiff in the sum of $1,300, from which the defendant has appealed to this court.

Appellant Kloizner is an unmarried man about thirty-two years old; respondent, Mrs. Heiman, is somewhat younger. She had been a married woman up to a few years prior to the time of the accident, but was then living with her parents. For some nine years prior to the time of the accident, appellant had been an intimate friend of respondent and her parents. During a pleasant Sunday afternoon, appellant drove his automobile to the home of respondent and her mother and invited them to take a ride with him. They accepted his invitation, respondent having first asked him if he felt capable of taking good care of them, evidently having in mind that he had purchased his car only a couple of months previous and might not as yet be an experienced driver. He, however, assured them that he could properly drive the car, saying that he had been practicing. They then all got in the car and he drove southerly on 16th avenue several blocks to Jackson street, then west on Jackson street four blocks to 14th or Rainier avenue, then south one block on that avenue to King street. As they neared King street, a Ford car was being driven east along King street approaching Rainier avenue. Both cars reached the intersection about the same time. Appellant, to avert striking the Ford car, swerved to the left into approximately the middle of the avenue and the intersection, but did not get over to the left a sufficient distance to avoid coming into collision with the Ford car, it being struck near the middle of the left side. This apparently caused appellant to lose control of his car, and, swerving to the right, it went in a southwesterly direction, crossing the westerly sidewalk of the avenue some thirty or forty feet south of the south line of King

street, and down an embankment on a slope of some forty feet out onto adjoining vacant private property, where one of the front wheels breaking caused the car to suddenly stop, which apparently caused the injuries to respondent for which she seeks recovery. The evidence does not make it clear as to just what position the car was in when it came to a full stop, but it at least seems certain that it was not overturned.

[1] The alleged negligence of appellant, claimed by respondent to have caused the accident, was his excessive speed in driving his car at the time of, and after turning south into the avenue from Jackson street, which, as has been noticed, was one block, apparently about three hundred feet, north of King street, where the cars collided. There is no evidence of any excessive speed prior to appellant's turning his car from Jackson street into Rainier avenue. We quote from respondent's own testimony her version of appellant's negligence occurring at that time and thereafter:

"When he got to 14th and Jackson he decided, I guess, must have decided all of a sudden, because he made a very careless quick turn coming down that hill and he turned so quickly that I thought he was going to hit that telegraph pole on the corner. I says, 'Please will you go slower.' I says, 'I don't mind riding slowly, as long as you are careful,' and he said, 'All right,' and he slowed up a little and we entered Rainier Boulevard. . . . King street is the first street south of Jackson street, one block. Another car, a little Ford, came out from a side street and cut in ahead of Mr. Kloizner's car and Mr. Kloizner hit this car—instead of stopping or slowing up he hit this car and made that car spin around like a top right in front of us. I thought at the time that Mr. Kloizner was going to stop, but instead, he headed over the curb. . . . He hit it in the center and swung it around, because our car was heavier than that little Ford and the car

revolved around in front of us. . . . I thought he was going to stop, you know. We were going very slowly at the time and I thought he would, . . .

"Q. Do you know at what speed the car was going from Jackson street on down to the time of the accident?

"A. Yes, sir; I believe he went,—well I remember looking at the speedometer, because when he made that wild curve I thought I would keep my eye on the speedometer and he kept going slowly and that was shifting between 25 and 30 miles an hour, not any regular rate of speed, but just between those two."

We are unable to see in this version of respondent as to what occurred there any certain or positive evidence of excessive speed, other than possible excessive speed while turning, and immediately following the turning by appellant of his car, from Jackson street into Rainier avenue. She leaves the inference, indeed comes near testifying directly, that appellant was driving his car slowly immediately prior to and when it struck the Ford car in the intersection of King street and Rainier avenue, and that his car was also moving slowly thereafter until it probably gained momentum by going down the embankment. The testimony of respondent's mother, who was riding in the back seat, where any excessive speed in the sudden turn of the car from Jackson street into Rainier avenue would be more readily felt and appreciated than by one sitting in the front seat as respondent was sitting, was, as to speed, as follows:

"I was sitting in the back. I did not care where he went; I did not think about it. He was driving. I do not know how fast he drove. All I noticed was that he came there and that he hit that other car and then I did not know what happened."

The testimony of respondent and her mother, above quoted, is substantially the whole of the evidence upon

the question of the speed at which appellant was driving his automobile at any time. It seems to us that this testimony does not show excessive speed as the cause of the accident. Indeed, it almost affirmatively shows to the contrary. There is no other evidence pointing to whose negligence caused the collision. That is, all the other evidence is as suggestive of negligence on the part of the driver of the Ford car as negligence on the part of appellant. The problem, as we view it, is more one of interpretation of this somewhat indefinite and unsatisfactory testimony, rather than one of conflict of evidence. We do not think the evidence calls for the conclusion that appellant was negligent, if at all, in that degree necessary to be shown to render him liable in damages to respondent, in view of her being merely his invited guest.

[2] Varying degrees of negligence, or varying degrees of required care, if one prefers to have the proposition so stated, touching the question of liability rested upon the ground of negligence, have been repeatedly recognized by us as a practicable working principle of the law of this state. *Sears v. Seattle Consolidated Street R. Co.,* 6 Wash. 227, 33 Pac. 389, 1081; *McConkey v. Oregon R. & Nav. Co.,* 35 Wash. 55, 76 Pac. 526; *Jordan v. Seattle, Renton, etc. R. Co.,* 47 Wash. 503, 92 Pac. 284; *Connell v. Seattle, Renton etc. R. Co.,* 47 Wash. 510, 92 Pac. 377; *Valentine v. Northern Pac. R. Co.,* 70 Wash. 95, 126 Pac. 99; *Kroeger v. Grays Harbor Const. Co.,* 83 Wash. 68, 145 Pac. 63; *Bradford-Kennedy Co. v. Buchanan,* 91 Wash. 539, 158 Pac. 76; *Smith v. Seattle School Dist. No. 1,* 112 Wash. 64, 191 Pac. 858; *Pinckard v. Pease,* 115 Wash. 282, 197 Pac. 49; *Fleming v. Red Top Cab Co.,* 133 Wash. 338, 233 Pac. 639. We do not mean by this that varying degrees of negligence or required care have been or can be differentiated with any sort of precision. Only that differing situations,

conditions and relations call for differing degrees of care.

Now, in the case before us, it hardly needs argument to demonstrate that appellant was not required to exercise that high degree of care in the carrying of respondent in his automobile merely as his invited guest, that he would have been required to exercise had he been carrying her in his automobile for hire. It seems equally plain that, in carrying respondent in his automobile as he did, appellant was required to in some measure exercise a higher degree of care for her safety than he would have been required to exercise with reference to the safety of a mere trespasser on his property; that is, his required care was of some degree between these two extremes.

The courts of this country are in seeming conflict in their attempts to define, in terms, the degree of care an inviter is required to exercise looking to the safety of his invitee in situations of this nature. In *Massaletti v. Fitzroy*, 228 Mass. 487, 118 N. E. 168, L. R. A. 1918C 264, we have a decision of the supreme judicial court of Massachusetts, which embodies one of the most exhaustive examinations of the question to be found in the books. The court states what it evidently conceives to be the controlling facts of that case as follows:

"While staying with the defendant as her guest the plaintiff at the defendant's invitation went out with the defendant in her motor car. The car was driven by a chauffeur furnished by the owner of the garage where it was kept. Through the negligence of the chauffeur the machine was overturned and fell on the plaintiff, causing the injuries here complained of. The jury found that while driving the machine the chauffeur acted as the defendant's servant, and this finding was warranted by the evidence. They also found that the accident was caused by the negligence of the chauffeur. Upon the jury making these findings the judge directed

the jury to return a verdict for the defendant and reported the case to this court.''

Upon these facts the court held, in substance, that the jury having failed to affirmatively find that the defendant, the inviter, or rather her servant for whose acts she was responsible,was guilty of gross negligence, she was as a matter of law absolved from liability. Having noticed and reviewed a large number of decisions of the courts of this country, the court states in general terms what we conceive to have been its controlling considerations, as follows:

''Where a defendant invites a plaintiff to ride *gratis* in his carriage the question is not a question of the measure of liability of a licensor to a licensee. It is the question of the measure of the liability assumed in case of a gratuitous undertaking. . . . Justice requires that the one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay. There is an inherent difficulty in stating the difference between the measure of duty which is assumed in the two cases. But justice requires that to make out liability in case of a gratuitous undertaking the plaintiff ought to prove a materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing. It is a distinction which seventy-five years' practice in this Commonwealth has shown is not too indefinite a one to be drawn by the judge and acted upon by the jury.''

That decision was rendered in 1917. A few months later the supreme judicial court of Maine in *Avery v. Thompson,* 117 Me. 120, 103 Atl. 4, L. R. A. 1918D 205, had under consideration a somewhat similar problem, in which, however, the general verdict of the jury was against the defendant, the inviter, without any special finding of degree of negligence, which the court sustained for reasons which will presently appear. Noticing the Massachusetts decision in *Massaletti v. Fitzroy*

and expressing some views seemingly in some measure antagonistic to the view that the jury should have found whether or not the defendant was guilty of gross negligence, Chief Justice Cornish, speaking for the court, said:

"Notwithstanding these antagonistic statements as to definition, we doubt not that the two courts, from a given state of facts, would be apt to reach the same conclusion as to liability. The difference is more verbal than real. . . . Adopting, then, the modern method of statement, we think that the true rule of liability on the part of a voluntary undertaking should be this, that he be required to exercise that degree of care and caution which would seem reasonable and proper from the character of the thing undertaken."

Then following a review of decisions touching liability for want of care on the part of inviters, it was further observed:

"The foregoing decisions give expression in varying forms to substantially the same fundamental principle and lead to the same essential inquiry, viz., Did the defendant exercise toward his invited guest that degree of care and diligence which would seem reasonable and proper from the character of the thing undertaken? The thing undertaken was the transportation of the guest in the defendant's automobile. The act itself involved some danger, because the instrumentality is commonly known to be a machine of tremendous power, high speed, and quick action. All these elements may be supposed to have been within the contemplation of the guest when she accepted the invitation. In a sense she may be said to have assumed the risks' ordinarily arising from these elements, provided the machine is controlled and managed by a reasonably prudent man who will not by his own want of due care increase their danger or subject the guest to a newly created danger. In other words, we conceive the true rule to be that the gratuitous undertaker shall be mindful of the life and limb of his guest, and shall not unreasonably expose her to additional peril. This

would seem to be a sane, sound, and workable rule; one consistent with established legal principles and just to both parties. It leaves the determination of the issue to the jury as a question of fact.

"Tried by this test we are constrained to say that the verdict of the jury fastening liability upon the defendant in the case at bar is not so palpably wrong that it should be set aside. His conduct bordered upon, if it did not actually reach, recklessness."

Observations in harmony with these views are found in *Cody v. Venzie*, 263 Pa. St. 541, 107 Atl. 383, *Roy v. Kirn*, 208 Mich. 571, 175 N. W. 475, and *Beard v. Klusmeier*, 158 Ky. 153, 164 S. W. 319, Ann. Cas. 1915D 342, 50 L. R. A. (N. S.) 1100.

We think that in no event has appellant's negligence been shown to be of such high degree as to render him liable in damages to respondent, in view of her being in his automobile as his invited guest.

The judgment is reversed and the trial court is directed to dismiss the action with prejudice.

TOLMAN, C. J., HOLCOMB, ASKREN, and MAIN, JJ., concur.

BRIDGES, J., concurs in the result.