[No. 19659. *En Banc.* October 18, 1926.]

ALVIN H. SAXE, *Respondent*, v. C. O. TERRY *et al.,*
*Appellants.*[1]

[1] NEGLIGENCE (23)—IMPUTED NEGLIGENCE—DRIVER'S NEGLIGENCE IM-
PUTABLE TO GUEST. The driver of an automobile is liable to an
invited guest only for gross negligence, and the evidence is
insufficient to establish gross negligence where it appears that
the party was on a hunting trip, anxious to reach the hunting
grounds as soon as possible, and approaching a curve before
daylight, at a speed of twenty-five miles an hour, skidded on a
wet road and went into the ditch (Fullerton J., dissenting and
Bridges J., dissenting in part).

Appeal from a judgment of the superior court for
Pierce county, Card, J., entered June 27, 1925, upon
the verdict of a jury in favor of the plaintiff, in an ac-
tion for personal injuries, sustained by an invited
guest in an automobile accident. Reversed.

*Murphy & Kumm, Charles L. Harris* and *Ellis, Flet-*
*cher & Evans,* for appellants.

*Harry R. Lea,* for respondent.

*Edwin C. Matthias, amicus curiae.*

MAIN, J.—This action was brought to recover dam-
ages for personal injuries. The case was tried to the
court and a jury and resulted in a verdict in favor of
the plaintiff in the sum of $4,070. Motions for judg-
ment notwithstanding the verdict and for a new trial
were interposed and overruled. Judgment was en-
tered on the verdict, from which the defendants appeal.

The appellant C. O. Terry, who will be referred to
as though he were the only party involved on that side
of the case, and the respondent both resided in the city
of Tacoma. One Edward J. Moldrup resides in the

[1]Reported in 250 Pac. 27.

city of Puyallup. The appellant and respondent had been acquainted for a number of years prior to the fifth day of November, 1924, when the accident for which damages are sought occurred. They were both interested in hunting and fishing and when they met from time to time the conversation was largely along these lines. On the day prior to the accident, the appellant by telephone communicated with the respondent and suggested a hunting trip to the Nisqually Flats on the following morning, stating that he desired to take Mr. Moldrup along. The respondent consented to the trip.

At 4:30 a. m., the parties had breakfast together, then drove to Puyallup where they got Moldrup and started for the Nisqually Flats. The appellant had placed his decoys in the tonneau of the car. The respondent rode in the front seat with the appellant and Moldrup in the back seat. By aid of the light in the dome of the car, Moldrup and the respondent as they proceeded along were stringing the decoys, the respondent cutting the strings the proper length and Moldrup tying them to the decoys. It was not yet daylight, and it was the desire of all to reach the hunting ground early in the morning. As they proceeded along and rounded a curve in the road, the respondent, owing to some movement of the car, said that that was a close call, or something to that effect, to which appellant replied, "Yes, it was, and I have to watch out, there is another curve down below here." When they approached the second curve a few moments later the automobile failed to make the turn, went into the ditch, and the appellant sustained the injuries for which the recovery was sought.

The respondent testified:

"I did not notice we were approaching the second curve until we were right on top of it. Then I shouted,

I said 'There it is!' Up to that time I shouted I was not aware that the doctor had done anything to lessen the speed of the car. I could not say whether he had attempted anything or not. I do not know the speed the car was traveling at that time.''

Moldrup testified:

''I remember the right angle curve just before the curve where the accident happened and remember what happened at that curve. We came pretty near not making that turn. Saxe said, 'pretty close call, doc' and he said 'yes, there is another turn on here a half mile; we will have to look out for that.' Saxe continued cutting string for the decoys. Neither of us were asked to assist in looking down the road or anything of the kind. I do not know the speed the car was making. It is pretty hard to estimate, sitting in the back there and I was working all the time. He pretty nearly didn't make the first turn for the reason that I think he came upon it before he knew it was there. There was not much of a skidding. . . . He should have made a longer turn.''

The appellant testified that as he approached the second turn he was traveling at the rate of approximately twenty-five miles an hour, and that the failure to make the turn was due to gravel or small pebbles upon the pavement at that place. Moldrup also testified to the presence of gravel. There was other testimony as to the conditions after the accident which will not be here detailed.

It will be assumed, but not decided, (1) that the appellant and respondent were not engaged in a joint enterprise or common adventure; (2) that there was sufficient evidence of the lack of ordinary care, if that were the rule to apply to a case of this kind, to take the case to the jury; and (3) that the respondent was an invited guest.

[1] The decisive question, however, is whether there was gross negligence on the part of the appellant,

or, to state it otherwise, whether there was evidence from which the jury had a right to find gross negligence. In the recent case of *Heiman v. Kloizner,* 139 Wash. 655, 247 Pac. 1034, a similar question was presented and it was there said:

"The problem, as we view it, is more one of interpretation of this somewhat indefinite and unsatisfactory testimony, rather than one of conflict of evidence. We do not think the evidence calls for the conclusion that appellant was negligent, if at all, in that degree necessary to be shown to render him liable in damages to respondent, in view of her being merely his invited guest.

"Varying degrees of negligence, or varying degrees of required care, if one prefers to have the proposition so stated, touching the question of liability rested upon the ground of negligence, have been repeatedly recognized by us as a practicable working principle of the law of this state. *Sears v. Seattle Consolidated Street R. Co.,* 6 Wash. 227, 33 Pac. 389, 1081; *McConkey v. Oregon R. & Nav. Co.,* 35 Wash. 55, 76 Pac. 526; *Jordan v. Seattle, Renton etc. R. Co.,* 47 Wash. 503, 92 Pac. 284; *Connell v. Seattle, Renton etc. R. Co.,* 47 Wash. 510, 92 Pac. 377; *Valentine v. Northern Pac. R. Co.,* 70 Wash. 95, 126 Pac. 99; *Kroeger v. Grays Harbor Const. Co.,* 83 Wash. 68, 145 Pac. 63; *Bradford-Kennedy Co. v. Buchanan,* 91 Wash. 539, 158 Pac. 76; *Smith v. Seattle School Dist. No. 1,* 112 Wash. 64, 191 Pac. 858; *Pinckard v. Pease,* 115 Wash. 282, 197 Pac. 49; *Fleming v. Red Top Cab Co.,* 133 Wash. 338, 233 Pac. 639. We do not mean by this that varying degrees of negligence or required care have been or can be differentiated with any sort of precision. Only that differing situations, conditions and relations call for differing degrees of care.

"Now, in the case before us, it hardly needs argument to demonstrate that appellant was not required to exercise that high degree of care in the carrying of respondent in his automobile merely as his invited guest, that he would have been required to exercise had he been carrying her in his automobile for hire. It

seems equally plain that, in carrying respondent in his automobile as he did, appellant was required to in some measure exercise a higher degree of care for her safety than he would have been required to exercise with reference to the safety of a mere trespasser on his property; that is, his required care was of some degree between these two extremes.''

It will be observed that in that case it is pointed out that this court has recognized varying degrees of required care or negligence as applied to particular facts. It was held in that case that the evidence did not show that the defendant was negligent in ''that degree necessary to be shown to render him liable in damages to respondent, in view of her being merely his invited guest.'' That opinion does not definitely fix the degree of lack of care which must be shown by an invited guest before liability will result. It holds that that degree is somewhere between that required where the carriage is one for hire and that necessary to be exercised with reference to the safety of a mere trespasser. From that it must follow that before an invited guest can recover a showing of gross negligence is necessary.

In jurisdictions where different degrees of negligence are recognized, they are usually classified as gross, ordinary and slight; gross negligence being want of slight care, ordinary negligence the want of ordinary care, and slight negligence the want of great care. In Shearman and Redfield on the Law of Negligence (6th ed.), vol. 1, § 49 is as follows:

'' 'Gross,' 'ordinary' and 'slight' negligence, defined.—Wherever these distinctions are observed gross negligence is said to be the want of slight care; ordinary negligence is the want of ordinary care; and slight negligence is the want of great care.''

In *Bradford-Kennedy Co. v. Buchanan,* 91 Wash. 539, 158 Pac. 76, this court held that there was no

liability in the case of a gratuitous bailment in the absence of a showing of gross negligence. There is no more inherent difficulty in applying the rule of gross negligence to an invited guest injured in an automobile accident than there is in the case of a gratuitous bailment.

A substantial distinction exists between gross negligence and ordinary negligence as well as between slight negligence and ordinary negligence, and it is one not too indefinite to be drawn by the court and acted upon by the jury. The authorities throughout the country are not in harmony upon the question as to whether the rule of gross negligence should be applied in a case like the one now before us, but, in view of the holding in *Heiman v. Kloizner, supra,* it does not seem necessary to enter upon a review of the cases.

The evidence in this case was not such as would sustain a finding by the jury that the respondent was guilty of gross negligence. All three parties in the automobile were naturally anxious to reach the hunting ground early in the morning, as the shooting would be better at that time. The road, as Moldrup testified, was wet, due to a heavy rain the night before, but was not "skiddy." It was not yet daylight at the time, and there is no evidence of excessive speed. Moldrup and the respondent both testified that they did not know the speed at which the automobile was traveling. It cannot be said that the appellant was guilty of gross negligence in approaching the curve at the speed that he did, not knowing at the time that the pavement at that point was covered with gravel or small pebbles.

It follows that the judgment must be reversed, and the cause remanded with direction to the superior court to dismiss the action.

TOLMAN, C. J., MITCHELL, ASKREN, PARKER, MACKINTOSH, and HOLCOMB, JJ., concur.

BRIDGES, J. (concurring)—I concur in the result of the foregoing opinion, but I reach my conclusion by traveling a different route. I concede that the driver of an auto does not owe to an invited guest, such as the respondent here, the same amount of care that he would be required to exercise towards pedestrians on the streets or the occupants of another auto traveling the highway. But to come to that conclusion, or to make that statement as a proposition of law, it does not seem to me either necessary or desirable to inject into the law an additional degree of care or negligence. Up to the present, in all personal injury cases other than where common carriers are involved, I believe the rule of this court has been the doctrine of ordinary care, or such care as a reasonably careful person would exercise.

What would be ordinary care to one person, or under one set of circumstances, might not be ordinary care to another person, or under a different set of circumstances. Slight care might be ordinary care. I am willing to concede that it ought to be the law that a reasonably prudent driver of an auto would not exercise that same amount of care towards his invited guest that he would feel himself under obligations to exercise towards others under different conditions. Ordinary care, as a rule of law, is, it seems to me, a fixed thing; but the amount of care required to make up ordinary care is a shifting thing which slides up and down on the scale. For example, a municipality must use ordinary care to keep all of its streets reasonably safe for travel, but the same amount of care need not be used on a street which is but little traveled as would be required on a street which is constantly congested with traffic. The degree of care should remain the same, but the amount of care required to make up that degree is different under different circumstances.

The ideas which I have tried to express can always be expressed to the jury by the trial court by giving instructions to the effect that what is ordinary care under one set of circumstances or to one person might not be ordinary care under another set of circumstances or to another person, and that, as a matter of law, while a driver owes to his invited passenger ordinary care, he does not owe him the same amount of care he would owe to others under different circumstances.

I think the rule of ordinary care is amply sufficient to take care of situations such as exist in this case.

I concur in the result of the foregoing opinion, because I think the court can say, as a matter of law, that the testimony shows conclusively that the appellant exercised towards the respondent (who was his invited guest) that amount of care which the law imposed upon him.

FULLERTON, J. (dissenting)—In my opinion the degree of negligence of which the driver of the automobile was guilty was a question for the jury and not a question of law for the court. I therefore dissent from the conclusion of the majority.