[No. 20414.  Department Two.  March 30, 1927.]

C. W. KLOPFENSTEIN, *as Administrator of the Estate of John H. Murray, Deceased, Respondent,* v. WILLIAM S. EADS *et al., Appellants,* JOHN A. AUSTIN *et al., Defendants.*[1]

[1] NEGLIGENCE (23)—IMPUTED NEGLIGENCE—DRIVER'S NEGLIGENCE IMPUTABLE TO GUEST.  A person who hires a baggage truck, not licensed to carry passengers, and who, with the consent of the driver, and without any agreement to pay, takes a seat with the driver to make the trip with the trunks, is a mere guest to whom there was no liability in the absence of gross negligence.

[2] SAME (23).  It may be said, as a matter of law, that the driver of a truck, with whom a guest was riding, was not guilty of gross negligence in stopping on the pavement to put up curtains, after being signalled to move off the road by the driver of a logging truck with a trailer and load of logs, where it was broad day light, the pavement was eighteen feet wide, the road level and straight, and the danger not imminent; especially where the guest had an opportunity to leave the truck and failed to do so  (ASKREN J., dissenting).

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered June 14, 1926, upon the verdict of a jury in favor of the plaintiff, in an action for wrongful death, sustained in an automobile accident.  Reversed.

*Troy & Yantis,* for appellants.

*Thos. L. O'Leary,* for respondent.

BRIDGES, J.—In May, 1925, John H. Murray, a traveling salesman, and whose administrator brought this action for damages on account of his death, employed the defendants Eads' truck to convey his five or six sample trunks from Olympia to Shelton.  An agreement was made between the parties as to the charge for the hauling.  No arrangements were made

[1]Reported in 254 Pac. 854; 256 Pac. 333.

whereby Mr. Murray was also to ride on the truck, but as it started from Olympia he asked the driver to stop, and he then got on the driver's seat and thus continued on the trip to Shelton, the defendant Bailey, a servant of the defendants Eads, doing the driving and being in charge. Because of Mr. Murray's death and the provisions of Rem. Comp. Stat., § 1211 [P. C. § 7722], no testimony was received as to what the decedent said or what, if anything, was said to him, concerning taking him in the truck. It is plain that deceased did not pay anything for his own transportation, did not intend, and was not expected by appellants, to pay.

The road between Olympia and Shelton is paved for a width of eighteen feet, and, generally speaking, on either side there is a dirt or gravel shoulder of more or less width. After the truck was well on its way to Shelton, it started to rain, and Mr. Murray asked Bailey, the driver, if there were curtains, and being informed that there were, he asked that they be put up to protect against the rain. Bailey drove the truck a short distance, stopped it, and proceeded to put up the curtains. There is a sharp dispute as to the location of the truck, when it was stopped, with reference to the pavement. There is some testimony to the effect that the righthand front and rear wheels were off the pavement, while there is also testimony to the effect that all the wheels were on the pavement and that the rear end of the truck was near to but did not reach the center of the pavement.

While Bailey was putting up the curtains, the logging truck of the defendants Austin and wife, driven by the defendant Riggin, appeared in sight, going with a load of logs in the same direction that the Eads truck was going, that is, toward Shelton. The place where the Eads truck was stopped was on a straight and

practically level piece of road. The logging truck carried a trailer and was loaded with about two thousand feet of logs. Its driver saw the Eads truck, blew his whistle, and waved to Bailey to get the Eads truck farther off the road. Bailey saw the logging truck coming, heard the whistle, and understood the signals which the driver on the logging truck made, but he continued to put up the curtains. The logging truck slowed down and undertook to pass the Eads truck, and in so doing pulled off somewhat onto the lefthand gravel shoulder, but struck the Eads truck a side glance, caused it to move forward and sidewise a little and then turn over into a ditch, thereby breaking Mr. Murray's neck. The latter, at the time of the injury, was sitting in the driver's seat.

There was a verdict for the plaintiff against all of the defendants. Only Mr. Eads and his wife have appealed. Many assignments of error are made, and among the rest the refusal of the trial court to grant a nonsuit and to grant the appellants' motion for judgment notwithstanding the verdict.

We pass over a number of assignments of error and go at once to one which, it seems to us, unfortunately for respondent, is decisive against him.

[1] The trial court did not expressly determine what was the relationship of the deceased to the truck. That is, was he a trespasser, a licensee, an invitee, a passenger for hire, or a mere guest? It seems to us that it is necessary to come to a conclusion on this branch of the case, for without so doing we cannot determine what legal obligation the appellants owed the deceased. The jury was told that appellants were bound to exercise ordinary or reasonable care. For this reason, it is plain that the trial court did not consider the deceased a passenger for hire, because, under

well known rules of law, if he were such, then appellants' duty toward him would be to exercise a degree of care much greater than ordinary or reasonable care. It is plain that the deceased was not a trespasser, because he was riding with the knowledge and apparent consent of the driver of the truck. We are also of the opinion that he was not a passenger for hire. There is nothing in the record to show that he paid, or expected to pay, for his own transportation. It merely shows that he hired the appellants to transfer his trunks from Olympia to Shelton, and that he got in the car without invitation. Further, this truck was not built for carrying passengers, nor is there any showing that at any previous time it had carried any; and under the laws of this state it would not be authorized to carry passengers for hire without having a permit from the state so to do, and it seems to be conceded that it did not have any such permit. It will not be presumed that appellants knowingly violated the law and carried a passenger for hire when they were unauthorized so to do. Merely hiring appellants to haul his trunks would not make him a passenger for hire. It seems to us that the deceased was a mere guest, riding in the truck at his own invitation, but with the consent of the driver, and for his own benefit and convenience. In his brief, learned counsel for respondent says that "the automobile was engaged solely to take his (the deceased) trunks to Shelton and not to take him. The deceased was allowed to ride merely as an accomodation to himself." If so, then he must have been a guest, and appellants owed him just such amount of care as any guest is entitled to receive.

Since this case was tried in the lower court we have handed down a decision to the effect that the driver of an auto is not liable for injury to his guest, unless

there has been gross negligence or wanton injury. *Saxe v. Terry,* 140 Wash. 503, 250 Pac. 27. Under the rule of that case, the appellants were required to exercise only slight care toward deceased and would be liable only for gross negligence.

[2] These questions, then, arise: Under the facts most favorable to respondent, can the court say as a matter of law that appellants' driver was not guilty of gross negligence or should that matter have been submitted to the jury?

Rem. Comp. Stat., § 6347, [P. C. § 222-6], provides that it shall be unlawful for any person to leave any vehicle standing upon the main traveled portion of any highway. The rule in this court is that a violation of the express provisions of a statute is negligence *per se.* If we assume, as we shall, that the driver made no effort whatsoever to get his truck off of the road, but left it standing on the paved highway, then it must be conceded that he was guilty of negligence. But that is far from saying that he was guilty of gross negligence or that he violated his obligation to use only slight care for the protection of the deceased. It seems to us that the facts speak for themselves and that every man must say that the negligence was not such as to be gross. It was broad daylight, the road was straight and level, the paved highway was eighteen feet in width. Under ordinary circumstances any person would be able to pass the truck without collision. The danger was not imminent. Every day drivers of autos do what appellants' driver did. Certainly, if the pavement had been somewhat narrower, and it had been dark, and the truck had stopped as it did and did not carry any tail light or display other signal to show its presence, the negligence under those circumstances would have been infinitely greater than under the cir-

cumstances as they existed here, and yet even under those facts it might well be argued that such negligence would not be gross, particularly as applied to the deceased.

In the case of *Saxe v. Terry, supra,* the facts were that, early in the morning and before daylight, Terry was going from his home, in his own auto, to the Nisqually flats for the purpose of hunting. Saxe was in the car with him, bent on the same errand. Terry was driving and the car was going quite fast. As it proceeded around a curve in the road the car skidded somewhat, and Terry remarked to Saxe that he had a rather close call and that he would have to watch out, because "there is another curve down below here." When the car approached the second curve a few minutes later, it failed to make the turn, went into the ditch, and Saxe was injured. We held that Saxe was a guest and could recover only upon a showing of gross negligence. We also held, as a matter of law, that the facts did not show that Terry was guilty of such character of negligence, saying:

"The evidence in this case was not such as would sustain a finding by the jury that the respondent (appellant) was guilty of gross negligence. . . . It cannot be said that the appellant was guilty of gross negligence in approaching the curve at the speed that he did, not knowing at the time that the pavement at that point was covered with gravel or small pebbles."

If on the facts of that case we could say that, as a matter of law, Terry was not guilty of gross negligence, certainly we must say the same on the facts of this case, for the danger here was not so apparent or certain as there.

Another case that is very much in point is *Gruber v. Cater Transfer Co.,* 96 Wash. 544, 165 Pac. 491. There the plaintiff hired the defendant to use its trucks in

transferring some trunks and household goods from one part of the city to another. Upon the goods being loaded, the plaintiff said to the driver of the truck, "Hadn't I better go up and show you where to put that stuff?" And the driver replied, "Yes," "All right," or "Come on." Thereupon the plaintiff got on the seat with the driver. During the trip he claims that he was thrown out of the truck as the result of the reckless driving by the defendant's employe. We therein strongly intimated that the plaintiff was only a guest, and that the truck driver owed him only slight care and would be liable only for gross negligence, and we held that the testimony clearly showed that the negligence was not gross, saying:

"We do not understand counsel for respondent [plaintiff] to seriously contend here that appellant's driver was guilty of gross negligence or of wantonly causing respondent's injury. Indeed, we see no room for such contention in the light of the evidence."

We cannot escape the conclusion that we must decide, as a matter of law, that the driver of the Eads truck was not guilty of gross negligence. Consequently, under the rule of the case of *Saxe v. Terry, supra,* the respondent is not entitled to recover.

Another argument against recovery might be made, and it is this. Under our uniform holdings, it was the duty of the deceased to use reasonable care to protect himself from injury. If the mere stopping of the truck on the paved highway was negligence of such gross character and the danger was so imminent, it would seem that the deceased must have seen and appreciated it, and should have left the truck, and thus saved himself. By remaining in the truck it is plain that he did not consider the situation a particularly dangerous one. It is a little difficult for us to see how the deceased can charge the driver with gross negli-

gence and at the same time sit in the truck and wait for the danger to overtake him.

All these questions necessarily arose upon the motion for nonsuit and the motion for judgment notwithstanding the verdict, and we are convinced that it was the duty of the trial court to have held that the evidence was insufficient to show gross negligence and to have dismissed the action for that reason.

The judgment is reversed, and the cause remanded with instructions to enter a judgment dismissing the action as to appellants.

MACKINTOSH, C. J., TOLMAN, and PARKER, JJ., concur.

ASKREN, J. (dissenting)—I dissent. The majority opinion holds that the driver of the Eads truck was not guilty of gross negligence as a matter of law. Assuming, without conceding, that the decedent was upon the truck as a mere guest and that the only duty the appellant owed him was not to be guilty of any act of gross negligence, I am convinced that the facts were sufficient to make it a question for the jury to determine, and by the majority holding we have invaded their province. The opinion shows that the truck was left standing on the paved highway,—a violation of the statute,—and therefore negligence *per se,* and that the driver was warned by the overtaking truck driver to get his truck off the road; that the appellant driver understood the signals, but nevertheless ignored them and failed to even warn the deceased. Can anyone doubt that this is serious, almost culpable negligence? If it is a question upon which reasonable minds might differ, then it must be a question for the jury. I find it difficult to even believe that reasonable minds would differ and think that the facts point unerringly to gross negligence.

I also find myself unable to agree that the decedent was guilty of contributory negligence in remaining seated in the truck. It must be remembered that he knew nothing of the overtaking truck nor of the signals given by the driver thereof.

To say that under these circumstances he was guilty of contributory negligence as a matter of law, is to say that every passenger in an automobile that stops on the pavement is guilty of contributory negligence, unless attempt is made to leave the automobile immediately. Surely this cannot be. If a stage traveling on a paved highway stops on the pavement for a short time, is every occupant therein guilty of contributory negligence barring recovery, if an accident occurs through collision with another vehicle? It makes no difference that in the present case the decedent may be held to be a mere guest, for contributory negligence is a complete defense to any action of this character, whether the negligence charged by the decedent be described as slight, ordinary or gross.

### ON REHEARING.

[*En Banc.* May 27, 1927.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the opinion heretofore filed herein. The judgment is therefore reversed and the cause remanded with instructions to enter a judgment dismissing the action as to appellants.