[No. 22084. Department One. March 3, 1930.]

MARY K. DAILEY, *Respondent,* v. PHOENIX INVESTMENT COMPANY *et al., Appellants.*[1]

[1]Reported in 285 Pac. 657.

*Grady & Velikanje,* for appellants.

*Rigg & Brown* and *C. W. Halverson,* for respondent.

BEALS, J.—This action was brought against both the driver and the owner of an automobile in which plaintiff was riding as a guest at the time of an accident which resulted in the receipt by her of severe personal injuries. She contended that the accident was caused by the gross negligence of the driver of the car, and that consequently, defendants should respond in damages. From a judgment in plaintiff's favor, entered upon the verdict of a jury, defendants appeal.

On the evening of October 28, 1927, appellant Twohy, a resident of Yakima, invited respondent to attend a dance to be held at a club house about eight miles from the city. The party, which consisted of respondent, another young lady, Mr. Raymond Twohy and the appellant George Twohy, after enjoying the evening's entertainment, left the club house about midnight in a Nash automobile which weighed about 3,500 pounds and was equipped with four-wheel brakes and balloon tires, for the purpose of returning to Yakima. Respondent and appellant Twohy (who will be referred to herein as though he were the sole appellant) occupied the front seat, Mr. Twohy driving, the other guests occupying the rear seat.

The road to the city, at least for a considerable distance from the club house, was an ordinary gravel road about twenty feet in width. A short distance from the club house, the road became what is referred to in the testimony as the "straightaway," of about three quarters of a mile to a mile in length. At approximately the end of this "straightaway," another

road crossed at right angles the road upon which the parties hereto were proceeding. The right-angle turn, however, had been done away with by a curve, which left an unimproved triangular space between the old right-angle turn and the new curve which formed a connection between the road upon which the parties were driving and the cross-road. In this space, which is referred to in the testimony as "the triangle," there stood a telephone pole, and also some large rocks, or boulders, which had been thrown into the "triangle," that area being a little below the surface of the road.

Testimony introduced by appellant tended to show that there was considerable loose gravel on the road at and near the curve, the gravel being thicker on the right-hand portion of the road, facing toward Yakima, than in the middle thereof. As the automobile entered upon the "straightaway," it attained a speed of approximately forty miles an hour, and appellant signaled to a couple of cars ahead of him, in which were riding persons who had also been to the dance, that he desired to pass them. This was safely accomplished, and the car continued on its way. As the car entered upon the curve in the road above referred to, it left the road bed and collided with some of the debris in the "triangle," the shock throwing respondent from the car and inflicting upon her the injuries of which she complains.

Appellant assigns certain errors, the only one of which that need be considered being that based upon the ruling of the trial court denying his motion for judgment in his favor notwithstanding the verdict of the jury.

Respondent was appellant's guest, and it is the law of this jurisdiction that in such a case the guest can recover damages from the host only in case the latter be guilty of gross negligence which proximately re-

600

sults in injury to the guest. (See decisions of this court hereinafter cited.)

Respondent contends that testimony on her behalf was introduced from which the jury were warranted in finding that her injuries were the result of gross negligence on the part of appellant in driving the automobile. On behalf of respondent, it is contended that there is in the record substantial evidence from which the jury may have found that the automobile was proceeding at the rate of at least sixty miles per hour; and that appellant was guilty of gross negligence in the manner in which he attempted to make the turn along the curve leading from one road to the other.

It is of course true that a motion for judgment notwithstanding the verdict of a jury should be granted only when there is neither evidence nor reasonable inference to be drawn from evidence upon which the verdict can rest. Bearing this rule in mind, we will consider the evidence from the standpoint most favorable to respondent's contention:

It is undisputed that the automobile driven by appellant passed, a short distance before reaching the curve where the accident occurred, two cars going in the same direction, and that the cars so passed were proceeding at approximately thirty miles per hour. With this as a basis, respondent presents elaborate calculations, which her counsel contend form a reasonable basis for a finding that appellant's car was proceeding at the rate of sixty miles per hour. None of the parties, or witnesses, at the time appellant's automobile passed the other cars, paid any particular attention to that fact. Speeds and distances are estimated in the testimony only approximately.

One of respondent's witnesses, the driver of one of the cars which appellant passed, testified on direct examination that he was then traveling at from thirty

to thirty-five miles an hour, and on cross examination testified:

"Q. What is there about the situation that causes you to have any recollection of your speed? A. That is the speed I usually travel. Q. And you judge that from your usual speed? A. Yes, sir."

He later testified on further cross-examination as follows:

"Q. Were you conscious of the fact some car was behind you, wanting to pass? A. Yes. Q. Did you move over to your right? A. Yes, I always do—. Q. It is your custom to move to the right when a car is attempting to pass, whether that is indicated by the horn or by the lights? A. Yes. Q. It is your custom to slow down a little? A. I usually slow down, but going at that speed I don't know whether I did. Q. You might have done it this time? A. Yes. Q. And Mr. Twohy turned out and passed both of you? A. Yes. Q. You were close enough together so he could do that? A. Yes. Q. About how far was this from the curve? A. I should say a couple of hundred yards, maybe three hundred. It might be five or six—I couldn't say exactly. But it wasn't far. Q. It might have been anywhere—. A. Three hundred to six hundred yards."

It is evident that slight differences in the bases of the calculations as to speed and distance from the place of the accident would cause a very great difference in the result. Indeed, appellant presents on his behalf a series of calculations based upon his view of the evidence which he contends demonstrate that his car was proceeding at a rate not exceeding forty-two miles per hour.

In our opinion the testimony in the record before us does not afford any sufficient basis for such elaborate calculations, based as they are only upon approximations, as those by which respondent seeks to demonstrate the speed at which appellant was driving at and

just prior to the time of the accident. The testimony as to the speed of appellant's car and the speed of the cars which he passed were merely estimated by the various witnesses; the place where the cars were so passed was not definitely fixed. The data upon which the calculations are based are not sufficiently definite and precise to make the result reached of any value. Instances doubtless occur in which such calculations may be made with some degree of certainty, but this is not one of them.

From the evidence it clearly appears that, shortly before the accident, appellant was driving fast enough to pass two cars that were moving at approximately thirty miles per hour. That is all that the evidence upon this point indicates. No circumstances appear which indicate that such driving was grossly negligent.

Respondent, called as a witness on her own behalf, testified on direct examination as follows:

"Q. After you got out on the highway after leaving the club house grounds did you notice the rate of speed at which Mr. Twohy was driving? A. Yes, I did for a distance. Q. For how long a distance would you say? A. Well, we didn't go very far after leaving the club house and he started rapidly, and I watched the speedometer until it reached a point about forty. We hadn't passed any cars then, but we were coming to them. Q. Did you watch the speedometer any time after that? A. No, I didn't. Q. Why did you not notice the speedometer after that? A. Well, I was frightened. I didn't know that highway. I knew there were so many curves, and I was frightened and I thought I would watch the road instead of the speedometer and if I saw any curve signs, which I expected to find, I would ask him to slow down. Q. There were other cars on the road, were there? A. Yes. Q. Did you pass any other cars between the time you left the club house and the time you reached the curve about a mile and a half below the club house? A. Yes. Q. How many cars did you pass? A. Three or four cars

from the time we left the club house till we were hurt. Q. About how far were you from the curve when you passed these three or four cars? A. We were quite a ways from there. Q. Did you notice whether or not Mr. Twohy increased his speed of his car as he passed the other cars? A. Yes he did. Q. After getting around them did you notice whether or not he decreased the speed of his car? A. I would say he did not. After we passed those cars we were on a straight-away, and there is an incline and you would have to apply the brakes to decrease the speed, on account of that. Q. When did you first notice the curve ahead of you? A. I would say we were about—I can't measure distance in feet, but I would say about three to five car lengths from that curve. Q. What if anything did you do at that point? A. I looked up at George, and I thought he was going to take the proper action. When it appeared to me he didn't intend to, I called him. Q. What did you say? A. I said 'Oh George.' Q. What did he do then? A. He put his foot on the brake and gave the wheel a wrench, and we were off. Q. Off the highway? A. Yes. Q. What happened to you as you left the highway? A. I am not so certain of that. I know the car gave three heavy jerks I felt; and while I didn't lose consciousness, I don't know what happened after that. Q. Who picked you up? A. I didn't know, myself; but I learned since it was Stanley Coffin and Stanley O'Shea. Q. Who brought you to town? A. Mr. Bryant. Q. How fast would you say Mr. Twohy was traveling at the time the car left the highway? A. I don't know just how much it would decrease the speed to throw one's foot on the clutch and brake suddenly; but I don't believe the speed would be decreased to less than forty miles an hour.

"Mr. Grady: We object as too vague and indefinite, and move to strike.

"The Court: I think it is vague.

"Q. How far before the point the car left the highway did Mr. Twohy step on the brake? A. When I called. Q. Had you entered the curve when you called? A. We were right at the curve. Q. How far around

the curve did you get when the car left the road? A. We had just made the curve, I would say from a quarter to a half of the way around it. Q. Did Mr. Twohy use the brake at any time prior to the time you called to him? A. I didn't see him use any brakes.''

Called as a witness on respondent's behalf, the other young lady who was riding in the car gave the following testimony on direct examination:

''Q. Did you pass any cars after you left the club house? A. Yes. Q. How many? A. I couldn't say how many—one or two. Q. Did you pass any cars from town, going out? A. I didn't notice any. Q. The car left the road after leaving the club house? A. Yes. Q. About how far from the club house was that? A. Possibly a mile and a half I should think. Q. Tell the jury in your own language what you knew occurred there. A. All I know is the car went off the road and I was thrown out. Q. Was there a curve in the road there at all? A. Yes. Q. Did you notice that curve? A. No, it was dark and I was in the back seat; I didn't notice the road particularly. Q. How was the car traveling just prior to the time it left the road? A. Well, I didn't notice at the time particularly. Q. Did you notice at any time between the time you left the club house and the time of the accident? A. I didn't notice anything in particular.

''Mr. Brown: May the jury be excused a moment?''

(The jury was excluded from the court room).

''Mr. Brown: I have been surprised by the testimony of this witness, and I would like to cross-examine her a moment in the absence of the jury.

''The Court: You may.''

The jury having been excused, the witness was examined and cross-examined as to certain statements which she admitted making to respondent's counsel prior to the trial. The jury was then recalled, and the direct examination of the witness was continued, as follows:

"By Mr. Brown: Q. I will ask you again, did you notice anything about the speed of the car between the time you left the club house and the time of this accident. A. Yes, the speed was quite great. Q. The speed was quite great? A. Yes."

Respondent contends that this case falls within the rule laid down in the case of *Adair v. Newkirk*, 148 Wash. 165, 268 Pac. 153, in which this court affirmed a judgment rendered by the trial court sitting without a jury, in favor of a guest in an automobile on account of injuries received, which the court held resulted from gross negligence on the part of the host.

It was held that the findings of the trial court, based upon disputed evidence, were not against the weight of the testimony, and that the same indicated that the host-driver had used no care whatsoever, in a situation obviously involving great danger. In that case, a collision occurred between the car in which plaintiff was riding and another car approaching from the opposite direction, which car was visible to the driver at a time when he attempted to pass another machine proceeding in the same direction in which he was going. The driver admitted that he saw the lights of the approaching car at all times, and sought to excuse his carelessness by saying that the lights were dim and yellowish in color, and that he was thereby misled as to the nearness of the approaching car.

The case last referred to is not controlling upon the state of facts disclosed by the record now before us. A situation involving a collision with a car proceeding in the opposite direction, resulting from an endeavor to pass a car proceeding in the same direction, only slightly resembles the situation presented by the case at bar.

Respondent cites certain decisions from other jurisdictions, including the case of *Altman v. Aronson,*

231 Mass. 588, 121 N. E. 505, 4 A. L. R. 1185, and *Pepper v. Morrill,* 24 Fed. (2d) 320, 57 A. L. R. 750. In the first case cited, the supreme court of Massachusetts very ably defines gross negligence, and differentiates that degree of carelessness from wanton, willful or intentional conduct, which has, or ought to be known to have, a tendency to injure. In such cases as these, the difficulty exists not so much in stating a legal definition or formula, but in determining whether or not a particular state of facts falls within the proper definition. The opinion in the *Altman* case, *supra,* is able and instructive, but is not of much assistance in determining the questions arising upon the state of facts now before us. In the *Pepper-Morrill* case, decided by the circuit court of appeals, a judgment in favor of a guest injured by the gross negligence of her host (who was also her husband) was upheld. The court decided that it clearly appeared that the driver attempted to turn from one road onto another, when too close to a fence. While the facts of that case as stated by the court bear considerable resemblance to the facts of the case at bar, we are of the opinion that the case now before us is controlled by the prior decisions of this court, which we shall now consider.

In the case of *Heiman v. Kloizner,* 139 Wash. 655, 247 Pac. 1034, this court reversed the judgment rendered by the trial court sitting without a jury, in favor of a guest, holding that there was no certain or positive evidence that the driver of the car in which the plaintiff was riding had proceeded at an excessive speed, and that the conclusion of the trial court that the evidence showed that the driver had been guilty of that degree of negligence necessary to render him liable in damages to the plaintiff was erroneous.

In the case of *Saxe v. Terry,* 140 Wash. 503, 250 Pac. 27, this court, sitting *En Banc,* reversed a judgment

rendered upon the verdict of a jury in favor of a guest and against the host, with instructions to dismiss the action, holding that the decisive question in the case was whether or not there was evidence from which the jury had the right to find that the defendant host had been guilty of gross negligence. It was held that the evidence concerning the rate of speed at which the defendant approached a curve in the road under the circumstances shown, was insufficient to support a finding of gross negligence. While the facts of each case are of course different, the facts stated in the opinion of this court last cited bear in some respects considerable similarity to the facts presented by the record in the case at bar.

Again, in the case of *Klopfenstein v. Eads,* 143 Wash. 104, 254 Pac. 854, 256 Pac. 333, this court reversed a judgment in favor of a guest, entered upon the verdict of a jury, and in the course of the opinion quoted extensively from the case of *Saxe v. Terry, supra.*

In the recent case of *Blood v. Austin,* 149 Wash. 41, 270 Pac. 103, this court held that, upon the record before it, the judgment of the trial court directing a verdict in favor of defendant and dismissing the action was correct. It appeared that plaintiff's intestate was riding in defendant's automobile as his guest. There was testimony in the record to the effect that defendant had been several times cautioned by persons in the car against driving too rapidly; that, in the attempt to negotiate a curve in the road, the car struck an outside guard rail, which gave way, the car falling down an embankment and inflicting injuries on plaintiff's intestate from which he died. This court, reaffirming the rule laid down in the cases hereinabove cited, says:

"As to an invited guest one is required to exercise only slight care and will be liable only for gross neg-

ligence. This is the theory and doctrine of our cases, and under the facts in this cause, fully as strong in favor of the one charged as were the facts in each of our former cases cited in favor of the persons therein charged, it must be held, as a matter of law, as the trial court decided, that there was no case to go to the jury.''

We are of the opinion that the case at bar falls within the rule laid down in the cases last cited, and that it must be held as a matter of law that the trial court should have granted appellant's motion for judgment notwithstanding the verdict. The evidence is insufficient to support a finding of gross negligence on the part of appellant.

The judgment appealed from is reversed with instructions to dismiss the action.

MITCHELL, C. J., PARKER, TOLMAN, and MILLARD, JJ., concur.