[No. 24086. Department Two. January 25, 1933.]

J. H. EUBANKS et al., Respondents, v. E. H. KIELS-MEIER et al., Appellants.[1]

[1]Reported in 18 P. (2d) 48.

*Floyd Foster* and *D. V. Morthland,* for appellants.

*Stephen E. Chaffee,* for respondents.

STEINERT, J.—This case presents a consolidation of two separate actions to recover damages for personal injuries sustained in an automobile accident. Trial before the court, sitting with a jury, resulted in verdicts favorable to both plaintiffs. From judgments on the verdicts, the defendants have appealed. One of the injured parties, Dorothy Eubanks, was a minor at the time of the accident, and brought her action through her father as guardian *ad litem.* For brevity's sake, she will be hereinafter referred to as one of the respondents.

The assignments of error present two questions for consideration and determination: (1) whether the relationship between the parties concerned was that of joint adventurers or that of host and guests; and (2) whether there was sufficient evidence of negligence, of the degree required, to establish liability on the part of appellants. Respondents contend that there was a joint adventure, and that the evidence established not only ordinary, but even gross, negligence.

The essential facts bearing upon the first question are these: On February 13, 1931, appellants, residing near Sunnyside, Washington, were the owners of an Oldsmobile automobile. On that day, the appellant, Mrs. Ida Kielsmeier, together with the respondents and a Mrs. Harter, made a trip to the city of Yakima in appellants' automobile, intending to do some shopping and to attend a luncheon given by a mutual friend. On two prior occasions, the respondent Mrs. Belle Eubanks had made trips with Mrs. Kielsmeier in the

same automobile, once to a Sunday-school convention and once to a meeting of the Ladies' Aid Society. Upon one of those occasions, Mrs. Eubanks had paid for Mrs. Kielsmeier's dinner, and upon the other occasion she had prepared and taken along lunch for the two. No arrangements, however, were made for the expenses of either of those trips.

Sometime prior to February 13th, Mrs. Eubanks and Mrs. Harter had, in a telephone conversation between them, discussed the expected trip to Yakima, and it had been suggested, and probably agreed, between the two that they would pay for the gasoline and oil used on that occasion. However, no mention of this conversation or agreement was made to either of the appellants. It rested in expectancy only. At about the time that the four ladies were leaving the Kielsmeier residence, on the morning of February 13, either Mrs. Eubanks or Mrs. Harter casually suggested that they drive up to a gas station and procure gas and oil. Mr. Kielsmeier, who was present at the time, and who kept gas at his home, replied that that would be unnecessary, as the car had already been serviced.

The drive to Yakima then began, and was made without mishap. The ladies did their shopping, and then had lunch at the home of their mutual friend. At about 4:30 in the afternoon, they left Yakima to return home. In the vicinity of the town of Granger, the accident, the details of which will be hereinafter given more specifically, occurred, resulting in the injuries to respondents for which these actions were brought. A few days after the accident, Mrs. Eubanks sent a dollar, by her husband, to Mr. Kielsmeier to pay for the gas used on the trip. The money was accepted by Mr. Kielsmeier at that time, but he later offered to return it. Respondents refused to accept the return of the money.

The above statement incorporates all of the evidence touching the subject of the relationship between the parties.

There is nothing in this evidence, in our opinion, from which any reasonable conclusion or inference can be drawn that there was a joint adventure between the parties. The prior trips were nothing but casual social engagements in which Mrs. Eubanks accompanied Mrs. Kielsmeier as a guest. The lunch and dinner were furnished by Mrs. Eubanks as a social, not a legal, obligation. The preliminary arrangement between Mrs. Eubanks and Mrs. Harter, relative to paying for the gasoline and oil on the Yakima trip, if it is to be considered seriously at all, was never communicated to the appellants. In any event, there was never a consummation of the prospective arrangement, because the casual suggestion made by one of the ladies at the beginning of the trip was not acted upon, the automobile having already been serviced with gasoline and oil.

But even if the gasoline and oil had been purchased by the lady companions, that of itself would not have established a joint adventure. Standing alone, it would have been simply an expression of courtesy and appreciation that a guest often evinces and manifests. The purchase by a companion of a trifling amount of gasoline, in the absence of any agreement by the parties to share the expenses of a trip, does not *ipso facto* convert the amenities of a friendly host into the obligations of a joint adventurer. To hold otherwise would compel every host to dilute his hospitality and season it with the flavor of a bargain. A guest may not accept a gratuity under mental reservation and, by a trifling reciprocity, convert it into a binding agreement having legal consequences, at least not without the consent, acquiescence or knowledge of his, or her, host.

Of course, such a purchase may be an element to be considered as evidence of an agreement made, but it does not, of itself, constitute a binding contract where there has been no meeting of minds upon the subject.

The parties may have made the trip to Yakima each having a like purpose in mind, but that fact alone does not constitute a joint adventure. A host and guest may, and often do, have a common objective, in point of time or place, yet their relationship as such is not thereby necessarily changed. There may still be lacking a community of interest or an engagement to effect a common purpose as that term is understood in the law of joint adventure. We have held that a joint adventure, as a legal concept, must have its origin in contract, that the agreement presupposes that each of the parties has an equal right to a voice in the manner of its performance and an equal right of control over the agencies used in its performance. *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932.

In this case, assuming that there was some arrangement relative to making the trip, there is a total lack of evidence, direct or inferential, of any right of voice on the part of the respondents in the manner of its performance, or of any right of control over the instrumentality or agency used in its performance. The respondents did not testify, or by slightest suggestion assume to say, that there was any agreement of any kind whatever whereby the parties were to share the expenses or to exercise joint control over the automobile.

Respondents cite two of our former decisions as controlling here upon the question of joint adventure. *O'Brien v. Woldson,* 149 Wash. 192, 270 Pac. 304, 62 A. L. R. 436, and *Lloyd v. Mowry,* 158 Wash. 341, 290 Pac. 710. In the *O'Brien* case, there was an express agreement between the parties to share expenses; one

was to furnish the automobile on a trip from Spokane to Seattle, the other was to pay for the gasoline on the trip. In the *Lloyd* case, where three men engaged to go upon a hunting trip, the expenses were to be jointly borne by the three. The situation here does not even approximate that of either of those cases.

Nor does this case fall within the principles laid down in *Jensen v. Chicago, Milwaukee & St. P. R. Co.,* 133 Wash. 208, 233 Pac. 635, *White v. Stanley,* 169 Wash. 342, 13 P. (2d) 457, and cases cited in each, but rather within those enunciated in *Rosenstrom v. North Bend Stage Line, supra,* and *Colvin v. Simonson,* 170 Wash. 341, 16 P. (2d) 839. The respondents were guests, not joint adventurers.

We come now to the second question, the matter of negligence. Having established the relationship of host and guest, the rule requiring gross negligence to fix liability applies. *Saxe v. Terry,* 140 Wash. 503, 250 Pac. 27; *Dawson v. Foster,* 169 Wash. 516, 14 P. (2d) 458. Upon this phase of the case, the evidence is substantially as follows: On the return trip from Yakima, in the vicinity of the town of Granger, the left rear tire of the automobile blew out, causing the car to swerve from one side of the road to the other, first striking a telephone pole, then several posts, and finally landing on its side in a ditch. The speed at which the car was traveling just prior to the accident was about forty miles per hour.

Respondents rely upon two grounds of negligence. The first relates to a claim of negligence in the use of a defective tire, the other to negligence in the operation of the car after the blow-out. It appears that, about two months before the accident, during a trip of the Kielsmeiers to California, a wire nail had caused a puncture of the tire; repair was made by having a boot cemented within the tire. There was no evi-

dence that the tire was not otherwise in good condition at that time. On the other hand, there was evidence that the use of a boot is a matter of common practice. Accessories of this character are generally carried by dealers and service stations for just such purposes, and, according to the evidence, seventy-five per cent of automobile drivers frequently use accessories of this kind. Certainly, the mere use of a boot in the repair of a tire otherwise in good condition can not be said to constitute gross negligence.

A witness in the case testified that, a day or two before the accident, while he was standing on the street, he saw the Kielsmeier automobile go by, and that, as it turned the corner, he observed that the tire showed that a piece of its rubber, about two and one-half inches in diameter, was missing, exposing the fibre underneath. There was no evidence that the tire was otherwise defective, and there was no evidence whatever that appellants knew of the absence of the piece of rubber. In any event, what was observable to them was likewise observable to respondents.

This case does not present the instance of a defective brake or steering apparatus, which comes under the immediate or ready observation of the driver or communicates itself at once upon an attempt to operate the car, nor does it present an instance of a latent or concealed defect known to the driver or operator, but not known to the guest. The law does not require the owner of a car to give it a thorough inspection whenever he invites a guest for a ride, at the risk of being charged with gross negligence. At most, in such instances, is he held to slight care.

Gross negligence has been defined in several of our decisions as want of slight care. *Saxe v. Terry,* 140 Wash. 503, 250 Pac. 27; *Klopfenstein v. Eads,* 143 Wash. 104, 254 Pac. 854, 256 Pac. 333; *Craig v. McAtee,*

160 Wash. 337, 295 Pac. 146. In the case last cited, a more specific definition was given by quotation from language used by other courts. *Bentson v. Brown,* 186 Wis. 629, 203 N. W. 380, 38 A. L. R. 1417, was quoted as defining gross negligence to be "such a degree of rashness or wantonness as evinces a total want of care for the safety of others." The opinion quotes a statute of Connecticut which provided that no person riding as a guest in an automobile should have a cause of action against the owner or operator, in case of accident, unless the accident was intentional on the part of the owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others. The opinion then proceeds to say that the rule of gross negligence does not differ appreciably from that statutory rule in fixing liability.

We do not think it can be said here, as a matter of fact or of law, that driving an automobile with the small piece of rubber missing from one of the tires, unknown to the owners, was, of itself alone, an act of gross negligence. Whether it may evince a want of ordinary care, capable of discovery upon reasonable inspection, we are not here called upon to decide.

Respondents cite for our guidance, as controlling upon the present question, the following cases: *Adair v. Newkirk,* 148 Wash. 165, 268 Pac. 153; *Trotter v. Bullock,* 148 Wash. 516, 269 Pac. 825; *Welch v. Auseth,* 156 Wash. 652, 287 Pac. 899; *Wolden v. Gardner,* 159 Wash. 665, 294 Pac. 574; *Carpenter v. Thomas,* 164 Wash. 583, 3 P. (2d) 1001. In the *Adair* case, a driver, traveling at the rate of forty miles an hour, attempted to pass a car traveling at the rate of thirty-five miles per hour, in the face of oncoming traffic. In the *Welch* case, the driver of a hearse, traveling at the rate of forty miles per hour, attempted to negotiate a dangerous curve on a wet and slippery pavement, with full

knowledge of the location and condition, with a warning sign staring him in the face. In the *Trotter* case, the driver was in an intoxicated condition, and drove at an excessive rate of speed. In the *Wolden* case, it was held that a *prima facie* case of gross negligence had been made upon a showing that the car was being operated by the defendant on a dark night at a rate of fifty or sixty miles an hour, over the objection of the plaintiff, who was accompanying him. In the *Carpenter* case, the operator of the automobile, traveling at a dangerous rate of speed on the wrong side of the road, ran head-on into a lighted street car in plain view of him.

The facts presented by those cases bear no similarity to those in the case before us, and are therefore not controlling on the present situation. Considering the circumstances under which appellants for sometime had been, and at the time of the accident were, using their automobile, it cannot be said that they were guilty of such a degree of inattention, rashness or wantonness as evinced a total want of care for the safety of respondents. They were, therefore, not guilty of gross negligence at the time of the blow-out of the tire.

The respondents further contend that Mrs. Kielsmeier was guilty of negligence in her manner of operating the car after the blow-out occurred; that she should have stopped the automobile sooner than she did, or else should have reduced its speed to such a point that the accident would not have happened. All of the evidence was to the effect that Mrs. Kielsmeier was a careful driver, and that her speed just prior to the accident was not excessive or such as to occasion her companions any concern. When the blow-out occurred, an emergency presented itself. Respondents themselves testified that Mrs. Kielsmeier appeared to be doing all that she could to control the car. One of

them testified that, just before the crash, Mrs. Kielsmeier cried out, ''I can't hold it.''

No one can anticipate what contortions an automobile will go through, or what vagaries it will pursue, when a blow-out occurs. It may steer for a telephone pole, or it may seek an embankment or a ditch. The driver is usually, or at least often, powerless. Even though he may err in his immediate action, yet if it be an error of judgment only, he is not to be charged with negligence for that act alone. Certainly, Mrs. Kielsmeier cannot be charged with gross negligence in her manner of operating the car after the blow-out took place. We do not think that she was chargeable with even ordinary negligence, as that term is defined as being the want of ordinary care under the circumstances.

We are clearly of the opinion that gross negligence was not shown by the evidence, and, therefore, that no case was made for the jury. The judgment is reversed, with direction to the trial court to dismiss both actions.

BEALS, C. J., MAIN, and TOLMAN, JJ., concur.