[No. 21261.  Department Two.  August 8, 1928.]

ALLEN J. TROTTER, *Respondent*, v. MYRON BULLOCK
et al., *Appellants*.

MELVIN C. ODDEN, *Respondent*, v. MYRON BULLOCK
et al., *Appellants*.[1]

[1] NEGLIGENCE (6-1)—CARE AS TO PERSONS INVITED—GUESTS IN AUTO
—GROSS NEGLIGENCE.  There is sufficient evidence of gross neg-
ligence, rendering the driver of an automobile liable to his
guests, where it appears that he was intoxicated, was advised
on that account to leave the car in the garage, and that he
started driving at reckless speed, and in a few blocks wrecked
the car.

[2] NEGLIGENCE (18)—CONTRIBUTORY NEGLIGENCE—CARE AS AGAINST
NEGLIGENCE OF ANOTHER—GUEST WITH RECKLESS DRIVER.  Guests
in a car are not guilty of contributory negligence in continuing
to ride with a drunken driver when they did not know he was
intoxicated or had been drinking.

[3] SAME (18).  Guests in a car are not guilty of contributory neg-
ligence in continuing to ride with a reckless driver where there
was no excessive speed until just before the accident, when
they complained, but no stops were made to enable them to
alight.

[4] SAME (18).  Riding with a stranger at 4 a. m. in the morning,
without inquiring as to his qualifications, does not constitute
contributory negligence.

[5] MASTER AND SERVANT (173)—NEGLIGENCE (4)—DANGEROUS IN-
STRUMENTALITIES—INJURIES TO THIRD PERSONS—CAR ENTRUSTED
TO INTOXICATED SERVANT.  The owner of a car who entrusts it
to be driven by one whom he knew had been drinking, and
who thereupon injures third persons through reckless driving
while intoxicated, is guilty of negligence, rendering him liable
for the consequences.

Appeal from a judgment of the superior court for
King county, Gilliam, J., entered February 20, 1928,
upon the verdict of a jury rendered in favor of the
plaintiffs, in actions in tort.  Affirmed.

[1]Reported in 269 Pac. 825.

. Bausman, Oldham & Eggerman, and Edw. L. Rosling, for appellants.

J. Speed Smith and Henry Elliott, Jr., for respondents.

Askren, J.—These two actions were brought to recover for injuries sustained by the plaintiffs while riding in an automobile, which for the purposes of this case may be said to be owned by the defendant Hickey and operated in his absence by defendant Bullock. From a verdict and judgment in favor of each plaintiff, this appeal was taken.

Since the cases were almost identical as to the facts, they were tried together and the appeal taken jointly.

Appellant Hickey is engaged in the real estate business in Seattle, and at the time in question, and for some months prior thereto, had the right to the use of a certain automobile. About midnight of July 2, 1927, he was introduced to the appellant Bullock at the garage where he kept the car, and they discussed the employment of Bullock, as Hickey needed some one to drive for him. They had some moonshine liquor to drink and later went to a restaurant. Returning to the garage, Hickey notified the man in charge to allow Bullock possession of the car with oil and gas any time he wanted it. Hickey went home and Bullock took the car, and after leaving his watch and money at a restaurant with a friend, started for what might properly be termed a joy ride. About 4:00 a. m., he stopped his car on Third avenue in the business section near Pike street, when he saw the two respondents, and upon ascertaining that they were looking for a restaurant, suggested that they ride with him and he would take them to one.

Driving down Third avenue, he stopped once and left the car with the explanation that he wanted to

see some one. Returning, he drove to the garage. Stopping there but a moment or two, he started back up Third avenue and began speeding. Complaints were made by both respondents at the speed, but Bullock replied that no one need be afraid as he was used to driving around the city. Within a very short period of time, however, during which only four or five blocks were covered, the car struck a marker in the street known as an "iron button" and careened into a pole at the sidewalk and seriously injured both respondents.

[1] Upon appeal it is urged that Bullock was not guilty of gross negligence which would render him liable to his guests, the respondents here, under the rule announced in *Heiman v. Kloizner,* 139 Wash. 655; 247 Pac. 1034, and *Saxe v. Terry,* 140 Wash. 503, 250 Pac. 27. This involves questions of fact. The evidence is conclusive that Bullock had been drinking. It was also shown that just a few moments prior to the accident, when Bullock stopped at the garage, he was advised by the man in charge to leave the car in the garage. The record shows that this advice was given because of his intoxicated condition; and he then drove the car the next few blocks at an excessive rate of speed.

We think these facts, which the jury were entitled to find from the evidence submitted to them, are such as to warrant the conclusion that Bullock was guilty of gross negligence. On a state of facts less strong than these we have just detailed, we recently held the driver of a car responsible to his guests for gross negligence. *Adair v. Newkirk,* ante p. 165, 268 Pac. 153.

[2] The next question naturally arising is this: Were respondents guilty of contributory negligence? Numerous facts are urged which appellants claim establish contributory negligence, but as to most of the facts claimed there was a dispute which the jury were

entitled to determine. We shall therefore refer to only a few of them. Taking up the most serious question first, which is the claim that respondents should have known of Bullock's intoxicated condition and left the car, respondents testified that they did not know he had been drinking, and that they did not hear the garage employee advise Bullock to leave the car there on account of his condition. If the jury believed their testimony, there would be no contributory negligence in these facts.

[3] It is said, also, that respondents should have left the car at some time prior to the accident. But if respondents' testimony is to be believed, there was no excessive speed until just before the accident; that complaint was then made and that no stops were made thereafter which would enable them to alight. The facts readily distinguish this case from *Garrow v. Seattle Taxicab Co.*, 135 Wash. 630, 238 Pac. 623, where we held a passenger in a taxicab guilty of contributory negligence because, on a journey through a storm fraught with unusual danger and realizing that the driver was not exercising proper care, he failed either to protest or to alight when opportunity offered.

[4] It is also claimed that respondents were negligent in riding with Bullock after they found that he was not the owner of the car, and riding in a strange automobile at 4:00 o'clock in the morning without taking proper precautions to learn the identity or qualifications of the driver. Upon reflection, it will be seen that no argument is required to show that these facts do not in any wise establish contributory negligence.

[5] The most serious point urged in this whole case arises around the question of Hickey's liability for the negligence of Bullock. We have already adverted to the fact that Hickey knew Bullock was drinking shortly prior to the time he took the car. The evidence dis-

closed that Hickey offered, and Bullock partook of at least two drinks of moonshine whiskey. It is difficult to lay down a hard and fast rule as to what amount of liquor is sufficient to make one an incompetent person to drive a car. It may be that the peculiar physical and mental character of a person and the kind of liquor consumed would have a very great bearing upon the question. But we think there can be little dispute over the assertion that it is well known that an individual given to drinking intoxicating liquor is very liable, after taking two drinks thereof, to drink more if opportunity offers. There is evidence in the case from which the jury might properly draw the inference that Bullock continued drinking after Hickey left. Nor can substantial dispute arise over the claim that one who partakes of liquor, even in a moderate degree, is not able to drive a car with the same degree of judgment as if he were wholly sober. While the modern automobile is a machine that may be driven by one with a very ordinary amount of mechanical knowledge, its extreme flexibility, which permits almost instant response to the action of the driver, makes it an exceedingly dangerous instrumentality to entrust to one not in the full possession of all of his faculties. Said the court in *Crowell v. Duncan*, 145 Va. 489, 134 S. E. 576:

"It is commonly known that one who is most competent and careful as an operator of an automobile when perfectly sober, becomes incompetent and reckless after indulgence in one or two drinks. So unfailingly is this true, that one who is given to drinking intoxicating liquor must be regarded as an unsafe and a potentially incompetent and dangerous driver, and the owner of an automobile who knows such habits and entrusts it to such a driver may be liable for injuries to third persons which follow."

We have announced substantially the same rule in *Mitchell v. Churches*, 119 Wash. 547, 206 Pac. 6. It is

true, as appellants contend, that the evidence of intoxication in that case was stronger than it is in the present one, but there was substantial evidence upon the point in question, and we are not disposed to interfere with the jury's finding in that respect.

Other errors are assigned, but we find them not well taken.

Judgment affirmed.

MAIN, HOLCOMB, and BEALS, JJ., concur.