[No. 25606.    Department Two.    December 16, 1935.]

VIVIAN ROBBINS, *a Minor, by Stanley Robbins, her Guardian ad Litem, et al., Respondents and Cross-appellants,* v. EINAR HANSEN *et al., Respondents,* KING COUNTY, *Appellant.*[1]

[1]Reported in 52 P. (2d) 908.

*Warren G. Magnuson, Edwin C. Ewing,* and *David J. Williams,* for appellant.

*Rummens & Griffin* and *George E. Mathieu,* for respondents and cross-appellants Robbins *et al.*

*Joseph Matsen* and *Eli M. Paulson,* for respondents Hansen *et al.*

BEALS, J.—Since the year 1929, the problem of relieving the widespread distress occasioned by the unemployment of many of our citizens has been a problem requiring the attention of well nigh all of the municipal corporations of this state. In King county, the problem has been acute, because of the large population, and the county commissioners, with limited means at their disposal, have been required to relieve a large amount of distress. In aiding those in need of assistance, the commissioners of King county, having few precedents to follow, tried different plans, seeking always to accomplish the maximum of relief with the minimum of expense and formality of administration.

In the first place, it was deemed wise to entrust the distribution of supplies to committees of the unemployed, commissaries maintained by the county being the distributing points. Much transportation was, of course, necessary, and every effort was made to obtain motor vehicles suitable for hauling fuel, food and other necessary supplies. Many cars were furnished by the unemployed themselves, and some trucks were loaned by persons who could spare them and who desired to help the good work along.

Defendants Einar and John Hansen, who were operating a dairy as copartners, loaned to the county a Garford truck of ancient vintage, which, with other vehicles, was sometimes used under the general direction of agents of the county in various phases of the

relief operations. While in the possession of the county, the truck was occasionally used for hauling hay owned by Hansen Brothers, they apparently furnishing the truck with gas while it was so employed. The truck was used by the county during the year 1931 and was again loaned during the summer of 1932. Hansen Brothers knew that the truck was being used in relief operations and was transporting goods over the county highways and the streets of the city of Seattle.

One J. B. Hayes was, during the period with which we are concerned, in the employ of the county, part of the time in charge of the Olympic Heights commissary, later being in charge of all commissaries. Clark Bowen had been designated by an organization of the unemployed to take charge of the transportation of supplies distributed by, or under the direction of, the Olympic Heights commissary, and had been for a while in charge of that depot. Russell Owens was an unemployed truck driver, who at times drove the Garford truck in connection with the relief program.

On the afternoon of December 21, 1932, Owens drove the truck to a coal mine some distance south of Seattle and there purchased a load of coal, paying therefor partly with his own funds and partly with money advanced to him by one O'Shea, a fuel dealer. The fuel was to be delivered to a customer of O'Shea's, who was to pay for the same.

On his return from the mine, and while proceeding along the highway from Renton to Seattle, the rear axle of the truck broke, and it was, of course, unable to proceed further. Owens left the truck, and testified that he later returned to it with a lantern, which he hung in a conspicuous position at the back of the truck, the tail light not being functioning. Some

witnesses testified that there was no lantern on the truck at the time of the accident.

At about ten o'clock in the evening, Chris Bach, accompanied by Miss Vivian Robbins, was driving his automobile toward the city of Seattle along the Renton road, upon which the truck was standing. Mr. Bach, who stated that there was no light on the truck and that he did not see the same, drove his car into the truck, with the result that both he and Miss Robbins were severely injured. Mr. Bach's automobile was also badly damaged.

Miss Robbins and Mr. Bach each sued the county and Hansen Brothers, claiming damages on account of the injuries which they had received. The cases were consolidated and tried to a jury, which returned a verdict in favor of each plaintiff and against all the defendants, each plaintiff being awarded the sum of one thousand dollars. The following special interrogatories were submitted to and answered by the jury:

"Interrogatory No. 1. Who engaged Russell Owens to drive the Garford truck involved in this accident on December 21st, 1932?

"Answer: No one authorized him.

"Interrogatory No. 2. Was that person authorized by the board of county commissioners of King county to engage Russell Owens to drive said truck with a load of coal from the Harrison mine to Seattle?

"Answer: No."

Hansen Brothers moved for judgment in their favor notwithstanding the verdict, which motion was granted. King county made a similar motion, asking in the alternative for a new trial, which motions the court denied. From a judgment in favor of each plaintiff entered upon the verdict, King county has appealed; plaintiffs having appealed from the judgment dismissing the case as to Hansen Brothers.

The county assigns error upon the refusal of the trial court to grant judgment in its favor dismissing the action, and upon the order denying it a new trial; plaintiffs assigning error upon the order granting the motion of Hansen Brothers for judgment in their favor.

For convenience, we shall refer to Mr. Bach and Miss Robbins as plaintiffs, to King county as the county, and to the Messrs. Hansen as Hansen Brothers.

When Hayes was placed in charge of the Olympic Heights commissary, he found the truck in question, with other transportation, in use in connection with the distribution of supplies. He testified that, from information given him, in part by one of the Hansens, it appeared that the truck had been turned over to be used by the unemployed in their "self-help program," with the understanding that, when Hansen Brothers wanted hay transported, the unemployed would furnish a driver for the truck, which would be used in moving the hay. The truck was continued in use during Hayes' administration of the commissary, the county furnishing gas, oil, tires and necessary repairs.

As to the condition of the truck, Hayes testified that it was in poor condition and, together with other cars, was "a menace on the highway." The witness stated that available transportation was used in view of the necessities of the situation. A mechanic who did some work on the truck during 1931 and the following year testified that the truck was in very poor condition, that the nut had come off the right end of the rear axle, that the threads on the axle were worn, and that, as it was impossible to make the nut hold, the witness with a hammer riveted the nut to the axle; stating that this would have a tendency to crystallize the end of the axle.

Shortly before the accident with which we are here concerned, the truck had collided with an automobile, with the result that a claim had been asserted against Hansen Brothers. The claim was not pressed, but it appears that one of the Hansens asked that the truck be registered in the name of the county.

About one week before the accident, the truck, driven by Owens, was used in hauling some hay for the Hansens, the latter complaining that some hay had been lost. On Sunday, December 18th, Hansen and Bowen went to the home occupied by Owens, where the truck was standing in the yard, one of the tires being flat. Some temper was exhibited between Owens and Bowen over the loss of the hay; Hansen testifying that he gave instructions that the truck should not be again used until he received a "release," explaining that by this word he meant an agreement on the part of King county to the effect that he would not be held responsible for damages which might be suffered by any person through the use of the truck.

The truck was left where the parties found it at the Owens house, but with positive instructions from Mr. Hansen that it should not be used until the agreement demanded by Mr. Hansen should be procured. No such agreement as Hansen desired was ever forthcoming, but on the following Wednesday, Owens, as he stated, assuming that the agreement had been accomplished, and using gas and oil supplied by King county, took the truck out, as above stated, to haul some coal, with the result that the axle broke and the truck was left upon the highway, causing the unfortunate accident above described. There is evidence to the effect that Mr. Bowen stated that he would procure the release demanded by Hansen by Monday noon, and plaintiffs argue that Owens, when on Wednesday he took out the truck, simply assumed

that satisfactory arrangements had been made, and that the truck was again available.

It may be assumed that, in carrying on its relief work, the county was acting under a duty imposed by law, and that an action may be maintained against a county for damages based upon "an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation." Rem. Rev. Stat., § 951 [P. C. § 8394]; *White-side v. Benton County,* 114 Wash. 463, 195 Pac. 519.

An automobile, when driven by an incompetent driver or one under the influence of liquor, may become a "dangerous instrumentality." *Moore v. Roddie,* 106 Wash. 548, 180 Pac. 879; *Trotter v. Bullock,* 148 Wash. 516, 269 Pac. 825; *Smith v. Nealey,* 162 Wash. 160, 298 Pac. 345. Generally speaking, the same rule should apply to an automobile known to be so mechanically defective as to render it liable to become uncontrollable on the highway.

Plaintiffs argue that both Hansen Brothers and the county are liable under the general law of bailment, and rely upon the case of *Texas Co. v. Veloz,* 162 S. W. (Tex. Civ. App.) 377. In the case cited, after describing an automobile which was in such a bad state of repair as to practically render it unmanageable and uncontrollable, the court said:

"It is the duty of the owner of an inherently dangerous agency or instrumentality to exercise ordinary care to prevent the same from inflicting injury and damage to others, and where a dangerous agency is committed to a servant, it is the owner's duty, in such cases also, to exercise reasonable care, through its servant, to guard such dangerous instrumentality committed to their care from inflicting injuries upon others. 1 Thompson on Negligence (2d Ed.) § 533."

Authorities are also cited to the effect that there is no difference in law between a gratuitous bailment

and one for hire, when defects in the article delivered were known to the bailor.

It clearly appears from the evidence in this case that the brakes on the truck were in very poor condition. Had plaintiffs been injured as the result of the defective brakes, a different question would be presented. The accident, however, was occasioned by the breaking of an axle. True, the truck was old and in many particulars in bad condition, but it does not appear that anyone had notice that the axle was likely to break, or that any reasonable examination would have disclosed any defect therein. The mechanic above referred to testified that he had riveted the nut to the axle, and that this might have a tendency to cause the axle to crystallize. This testimony is not definite and amounts to no more than supposition.

The defect, if any, was latent, and not one for which an owner could be held responsible under the rule laid down in the cases cited by plaintiffs. The defects in the truck which were manifest and known to exist had nothing to do with the accident which caused the truck to be left upon the highway, and plaintiffs cannot prevail in this action upon the ground that a dangerous agency was permitted to be used and that they suffered damage for which the defendants in this action are liable because they permitted the truck to be used on the public highways.

Assuming that Owens was negligent in permitting the truck to remain on the highway as he did, and assuming that he failed to properly give notice of its presence by lights or danger signals, the question of the liability of the county or that of Hansen Brothers for his negligence must now be considered.

The truck parked on the highway was undoubtedly a nuisance, in the absence of the giving of proper notice of its presence. We are satisfied, as was the

·trial court, that one of the Hansen Brothers had positively forbidden the use of the truck until the Hansens were secured by the county against any claim which might arise because of injuries caused by the truck while being used on relief work. Plaintiffs contend that, because the Hansens did not take the truck away, but left it by Mr. Owens' house, they are liable in this action.

We cannot agree with this contention. We are satisfied that, in forbidding the further use of the truck, Mr. Hansen was acting in entire good faith, and he had no reason to suppose that his instructions would be disregarded. It was anticipated that his demand would be complied with, and in order to protect himself he was not required to take the truck away, it being supposed that he would soon receive the agreement which he required, after which he was willing that the truck be again used. The fact that one of the Messrs. Hansen had forbidden the use of the truck was established by plaintiffs' witnesses, and it clearly appears that the truck was not thereafter used on business for the Hansens.

The trial court did not err in granting Hansen Brothers' motion for judgment in their favor notwithstanding the verdict.

The trial court was of the opinion that, in driving the truck on the day of the accident, Owens was, in effect, an employee of King county, and that, because of the relationship which existed between Owens and the county, the latter became liable to plaintiffs because of Owens' negligence. It is true that the county had supplied some parts needed by the truck and had furnished gas therefor. We are clearly of the opinion that, on the day of the accident, Owens was using the truck on his own business. Mr. O'Shea was selling fuel and had a customer for

the coal which Owens procured at the mine. The money to be paid by this customer for the coal was to belong to O'Shea and Owens. There is little conflict in the evidence as to these facts, the parties differing principally as to the legal effect thereof.

By its answers to the special interrogatories, the jury found that Owens was using the truck on the day in question without specific authority. Assuming that he worked two days a week distributing supplies from the commissary, and assuming, though not deciding, that, while so occupied, Owens was an employee of the county, nevertheless it cannot be held that, on the day of the accident, Owens occupied toward King county any relationship that would render the latter liable to plaintiffs. We are convinced that it must be held, as matter of law, that, under the evidence, the county is not liable to plaintiffs; Owens, in taking out the truck on the day of the accident, having done so in the performance of his own business, concerning which the county had nothing to do.

For the reasons hereinabove stated, the trial court erred in denying the county's motion for judgment in its favor notwithstanding the verdict. The judgment appealed from is affirmed on plaintiffs' appeal, and on the county's appeal is reversed, with instructions to the trial court to grant judgment in the county's favor notwithstanding the verdict.

MITCHELL, BLAKE, HOLCOMB, and MAIN, JJ., concur.