[No. 20641. Department Two.   July 26, 1927.]

JOHN MOOHR, *by his Guardian ad Litem Linne Moohr,* *Respondent,* v. VICTORIA INVESTMENT COMPANY, *Appellant.*[1]

[1] CARRIERS (77-3, 107)—PERSONAL INJURIES—ELEVATORS—CONTRIB- UTORY NEGLIGENCE—ENTERING CONVEYANCE—QUESTION FOR JURY. Whether a boy was guilty of contributory negligence, in falling down the shaft of an automatic elevator in an apartment house, is a question for the jury, where it appears that he left the door of the elevator open for the purpose of immediately re- turning and entering, knowing that the elevator could not be moved while the door was open, if it was in proper order, there was no light in the elevator, and upon the boy's return, the door was open but the car had been moved up, allowing him to fall down the shaft.

[2] SAME (77-3, 84)—PERSONAL INJURIES—ELEVATORS—PRESUMPTION —RES IPSA LOQUITUR. Where an elevator accident was due to the erratic and unusual action of an automatic elevator in moving while a door was open, contrary to the notice given to the tenants of an apartment house, the burden is cast upon the defendant to negative the presumption of negligence, on the theory of *res ipsa loquitur;* and this is not done by simply showing an inspection and that the elevator worked properly before and after the accident, where it had, on previous oc- casions, acted in a similar erratic and unusual manner, the ap- pellant's servant in charge making no report thereof.

[3] SAME (77-3, 84). In such a case, it cannot be urged that the doctrine of *res ipsa loquitur* does not apply because plaintiff was a mere licensee, where it appears that he was an invited guest of one of the defendant's tenants in an apartment house.

[4] CARRIERS (77-3)—LANDLORD AND TENANT (78)—ELEVATORS— LIABILITY TO INVITED GUESTS OF TENANT. In such a case, de-

¹Reported in 258 Pac. 43.

fendant cannot claim non-liability to invited guests of a tenant, in the absence of evidence of gross negligence or wanton action on the part of defendant; since his duty in the operation of a passenger elevator in such a case is the same to invited guests of tenants as to the tenants themselves.

[5] CARRIERS (77-3, 84)—ELEVATORS—PRESUMPTIONS — RES IPSA LOQUITUR. In such a case, it cannot be claimed that the doctrine of *res ipsa loquitur* has no application because plaintiff was a physical actor in bringing about his injuries, he having acted along the line of defendant's express directions as to his safety.

Appeal from a judgment of the superior court for King county, Jones, J., entered January 12, 1927, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained in an elevator accident. Affirmed.

*Stephen V. Carey* and *R. E. Bigham,* for appellant.
*George F. Hannan,* for respondent.

PARKER, J.—The plaintiff commenced this action in the superior court for King county, seeking recovery of damages for personal injuries suffered by him as the alleged result of the negligent maintenance of an automatic passenger elevator by the defendant company in its apartment house in Seattle. A trial upon the merits in that court, sitting with a jury, resulted in verdict and judgment awarding recovery against the defendant, from which it has appealed to this court. The contentions here made in behalf of appellant company all have to do with the question of its right to judgment of dismissal as a matter of law, either for want of sufficient evidence showing negligence on its part or because of evidence conclusively showing contributory negligence on the part of respondent Moohr. The evidence touching the detail facts is not seriously in dispute. As to what inferences may be drawn therefrom constitutes the principal controversy.

On December 2, 1925, when respondent was injured,

he was a minor approximately twelve years old. At that time, appellant owned and operated a large apartment house in Seattle, in which it maintained an automatic passenger elevator for the common use of its apartment tenants and their invitees. There was a sliding or collapsible door to the elevator cage, which was intended to be open only· when the floor of the cage was approximately on the same level as one of the hallway floors of the building. If the elevator was in proper working order, the cage could not be moved up or down when that door was open; that is, that door, when open, had the effect of automatically securely locking the cage in that stationary position. There was also a sliding door to the elevator shaft on each hallway floor of the building. The open and closed condition of that door had the same effect upon the holding stationary and the movement of the cage as had the open and closed condition of the cage door. Thus, the cage could not be moved up or down from any floor at which it might be stopped when either of the doors was open. Besides, neither of the hallway doors to the shaft could be opened, unless the cage was stopped approximately on a level with its hallway floor. The manner of using the elevator, with which respondent was familiar and which use he was fully able to make, he having used it a number of times before he was injured, was made plain by framed, conspicuous directions posted on each floor at each of the shaft hallway doors, reading as follows:

"OTIS AUTOMATIC ELEVATOR

"Operated by Passenger According to Directions
"1. Press hall button to bring car to floor.
"2. When car stops at floor, door can be opened. Shut door tight on entering.
"3. Press button in car numbered for desired floor.
"4. Car stops itself at proper floor.

"5. Shut hall door and door on platform tight on entering or leaving car. Elevator will not operate unless all doors are closed tight."

Respondent lived with his mother some distance from appellant's apartment house, and was interested in collecting and trading postage stamps. Some months prior to being injured, he became acquainted with Bobbie Burrows, a boy about his own age who lived with his mother in one of the apartments on the second floor of appellant's apartment house, some distance along the hallway from the elevator. Bobbie Burrows was also interested in collecting and trading postage stamps. The boys had visited each other at their respective homes a number of times, exhibiting their stamps to each other and also trading stamps. Respondent was welcomed by Mrs. Burrows into her home as a companion to her son Bobbie, and plainly gave respondent to understand that she liked him, and that he was welcome to come there to visit with her son Bobbie at any time.

About half past four o'clock in the afternoon of the day respondent was injured, he went into the apartment house to visit his friend Bobbie Burrows. He had with him a Saturday Evening Post bag in which he had some stamps and stamp albums. As to what occurred from the time of his then entering the apartment house until he was injured, let him tell his own story, as abstracted by counsel for appellant, as follows:

"I went around to the side of the apartment house, went in the door, got in the elevator, went up to the second floor, got out, went around the corridor to Bobbie's house, about eighty or ninety feet from the elevator. I left the cage door of the elevator closed. Both doors were closed. I had my bag with me. I rang the door bell of his house; Mrs. Burrows came to the door, I asked if Bobbie was there, she said, no,

he was at the Junior Citizens. Then I went back. There were two girls in the doorway of one of the other apartments, one of them said 'What have you got? Magazines?' I said 'No, I have some stamps.' Then I went in, opened the door, opened the cage door, stuck my bag in one of the corners and went back to find out what they wanted. They started to talk to me and were called in the house. I had put my stamp bag in the elevator. The elevator light was not on; but it was there. I opened both doors, threw in my sack, then shut the outside door but left the inside door open. I left the inside door open when I put my stamp bag in and went back after the girls. They were called in the house. Then I went back to the elevator, opened the door. I don't know whether I looked before I stepped or after. I took a step. Everything turned red and black. That is all I remember. I do not remember being taken to the Orthopedic hospital, but I remember being there. When I really regained consciousness in the hospital I was in bed, and ice pack on my head. My mother was sitting by the bed. My arm was bound up with cloth. Before I operated this elevator I did not know how. At the time of the accident I did know how. There were signs in the elevator. They told you exactly how to operate the elevator and that it could not be moved if any door was open. At the time I left the door open, when I went back to see these girls, I knew the elevator could not be moved with the door open. I was away from the elevator after I put my bag in about sixty-five seconds.''

A short time thereafter respondent was found at the bottom of the elevator shaft where he had fallen from the second floor. The cage was found to be raised above the second hallway floor; that is, the floor of the cage was about four feet, or possibly a little more, above the second floor of the building. The shaft door of the second floor is partly glass and partly wood panel, the lower four feet of the door being of wood and the part above that being largely of glass. One standing in the hallway looking through the glass of

the door into the shaft could probably see, by observing fairly closely, as to whether or not the cage was there, even though there be no light turned on in the cage. Respondent's Saturday Evening Post bag was found in the cage as he had left it. There is no evidence of a substantial character directly contradicting the evidence of the facts above summarized.

[1] We first notice the contention made in behalf of appellant that respondent was guilty of negligence causing his injuries, or contributing thereto, to the extent of preventing his recovery, and that the trial court should have so decided as a matter of law. This contention, we think, cannot be sustained. It may be that respondent, upon his return to the elevator just before his fall, did not observe with much care, so far as actually looking is concerned, as to whether or not the cage was opposite the shaft hallway door; that is, in its proper position for opening the door and entering the cage. But it is to be remembered that, if the elevator had been in proper working order, respondent would not have been able to open the shaft hallway door, had the cage not then been there. The fact that he was able to readily open the door was an assurance to him that the elevator was there in its proper location for entering from that floor. Respondent not only knew this from experience, but the printed directions posted at the door had also so informed him. In addition, he had left the cage door open evidently for the very purpose, as the jury might well believe, to hold the cage at that place until his return, to be made in a very short time.

It seems quite plain to us that, under these circumstances, whether respondent exercised the care that was there called for was a question for the jury to decide and not a question that could be decided against him by the court as a matter of law. The decision of

the California supreme court in *Jacobi v. Builders' Realty Co.*, 174 Cal. 708, 164 Pac. 394, in so far as it deals with the question of contributory negligence, presented substantially as it is here presented, seems directly in point in respondent's favor. In there disposing of the question, the court said:

"Under its second proposition appellant contends that the negligence of the deceased is established by virtue of the fact that if on opening the door she had used her eyesight, as she was in duty bound to do, she would have perceived that the cage was not there, and that it was therefore contributory negligence upon her part to have made the fatal step. We have hereinbefore sufficiently outlined the course of conduct which the deceased doubtless pursued, and also the conditions which prompted her to that course of conduct. It has thus been made to appear, and indeed the positive evidence is to that effect, that people, using such an elevator and finding that in general practice when such an elevator was operating properly a door could not be opened unless the cage was at that floor, had come to rely, in determining the presence or absence of the cage, upon their ability or inability to open the door. The deceased unquestionably opened this door or found it open. In either case (there being no attendant to warn or any other kind of warning given) it was not at least unnatural that she should have placed reliance upon the conditions which she found. Whether under these circumstances she should also have looked or be convicted of negligence, presents a question of reasonable argument before a jury, but one which cannot be resolved against plaintiffs as matter of law. The language of the Court of Appeals of New York is here appropriate:

" 'An elevator for the carriage of persons is not, like a railroad crossing at a highway, supposed to be a place of danger to be approached with great caution; but, on the contrary, it may be assumed, when the door is thrown open by an attendant, to be a place which may be safely entered without stopping to look, listen, or make a special examination.' *Tousey v. Roberts,* 114 N. Y. 312, 21 N. E. 399, 11 Am. St. Rep. 656."

[2] Coming now to the question of appellant's negligence, we may concede for present purposes that the evidence does not affirmatively show any specific act of negligence on the part of appellant, as being the proximate cause of respondent's injuries. It seems to us, however, in view of the nature and purpose of the elevator, its failure to properly operate as it was manifestly designed to operate, appellant having informed its tenants and their invitees by the above quoted directions that it would properly operate by following those directions, and respondent being injured by the erratic and unusual action of the elevator; that there was thereby cast upon appellant the burden of satisfying the jury by affirmative proof that such erratic and unusual action of the elevator was without fault on the part of appellant. In other words, we are of the opinion that, when the evidence showed, as we think it did sufficiently show for the jury to conclude, that the accident occurred as claimed by respondent, a *prima facie* case of negligence as to the proximate cause of respondent's injuries was made against appellant. There is some evidence tending to show that the elevator had been properly inspected by appellant, and that it worked properly both before and after respondent was injured. This, however, is in substance all we have in this record tending to negative the presumption of negligence on the part of appellant, arising from the manner of the happening of respondent's injuries. There is some evidence that the elevator had, on previous occasions, acted in a somewhat similar erratic and unusual manner, as at the time the respondent was injured, and that appellant's servant in charge, having knowledge thereof, made no report or gave any serious consideration to such previous action of the elevator. These observations, we realize, constitute, in substance, an applica-

tion of the doctrine of *res ipsa loquitur* to support the
jury's finding of negligence on the part of appellant.
The elevator manifestly was maintained for the com-
mon use of all of appellant's apartment house tenants
and their business and social invitees, appellant as-
suming the obligation of keeping the elevator in safe
operating order, and, by posting the directions above
quoted, plainly informing all such users how to safely
use the elevator. Respondent was proceeding to use
the elevator exactly as so directed, and being by the
jury absolved from the charge of contributory neglig-
ence, he is entitled to the benefit of the presumption of
appellant's negligence being the proximate cause of
his injuries, as a sufficient support to the jury's finding
in his favor.

[3] It is contended in behalf of appellant that the
doctrine of *res ipsa loquitur* has no application here
because, as it is argued, respondent was a mere licensee
to whom appellant owed no duty other than to re-
frain from gross negligence resulting in his injury,
and to refrain from wantonly injuring him. Our
decision in *Inman v. Home Tel. & Tel. Co.,* 105 Wash.
234, 177 Pac. 670, 2 A. L. R. 1543, is particularly relied
upon to support this contention. In that case, there
was involved an injury to Mrs. Inman, who was a
mere licensee of both the defendant telephone com-
pany and the customer of the company for whom
it had installed the telephone, in the use of which Mrs.
Inman was injured by an electric shock; that is, Mrs.
Inman was using the telephone upon her own request
made to the company's customer wholly apart from
any business or social relation with either the company
or the company's customer. It was under these cir-
cumstances that it was held by us that the company
owed no duty to Mrs. Inman other than to refrain
from gross negligence resulting in her injury and to

refrain from wantonly injuring her, and that therefore the doctrine of *res ipsa loquitur* did not apply; that is, that Mrs. Inman's injury from the electric shock, while using the telephone, did not create the presumption of gross negligence or wanton injury to Mrs. Inman on the part of the company. Clearly, we think respondent in this case was more than a mere licensee of Mrs. Burrows and her son Bobbie. He was an invited guest to their home for a social purpose, to avail himself of which he would naturally use the elevator provided by appellant for use of tenants of its apartment house and their invitees. Unlike the use of the telephone by Mrs. Inman above noticed, respondent used the elevator for one of the very purposes contemplated by Mrs. Burrows' tenancy in the apartment house.

[4] It is further contended in behalf of appellant in this connection that, though respondent be considered as an invited guest of Mrs. Burrows, he could be awarded recovery only upon proof of gross negligence or wanton action on the part of appellant resulting in his injury. This view is sought to be sustained by reference to our decisions in *Heiman v. Kloizner,* 139 Wash. 655, 247 Pac. 1034, *Saxe v. Terry,* 140 Wash. 503, 250 Pac. 27, and *Klopfenstein v. Eads,* 143 Wash. 104, 254 Pac. 854, 256 Pac. 333. Those cases all have to do with injuries to invited guests riding in an automobile, recovery being sought against the invitor, wherein it was held that such invitor was not liable for injuries to his invitee, except for gross negligence or wanton action on the part of the invitor resulting in injury to the invitee. The argument seems to be that, because such an invitee would have to show gross negligence or wanton action on the part of his invitor, that rule would be applicable in this case in favor of appellant before recovery could be had against it. Such argu-

ment, it seems to us, ignores the material fact that this action was not brought against Mrs. Burrows, respondent's invitor, but against appellant who owed to Mrs. Burrows and her invitees a much higher degree of duty; that is, the duty of maintaining the elevator in a safe operating condition as for hire. Such, manifestly, was appellant's duty to Mrs. Burrows, and we think the law is that, by virtue of Mrs. Burrows' tenancy, which included her use of the elevator, to be safely maintained by appellant, the duty of appellant to respondent, her invitee, was exactly the same, under the circumstances as here shown. In the text of 16 R. C. L. 1067, we read:

"It is the well settled general rule that the duties and liabilities of a landlord to persons on the leased premises by the license of the tenant are the same as those owed to the tenant himself. For this purpose they stand in his shoes. Visitors, customers, servants, employees and licensees in general of the tenant are on the premises as guests, etc., of the tenant, and not of the landlord. Whatever rights such invitation or license from the lessee may confer, as against such lessee, as against the lessor it can give no greater rights than the lessee himself has. The guest, servant, etc., of the tenant is usually held to be so identified with the tenant that his right of recovery for injury as against the landlord is the same as that of the tenant would be had he suffered the injury."

Substantially the same view of the law is stated in 36 C. J. 224, as follows:

"Under circumstances where a liability on the part of the landlord would arise on account of the defective condition of the demised premises or parts over which he had reserved control, such liability is not limited to the tenant, but includes all persons who within the contemplation of the parties were to use the premises under the hiring. Thus, in such cases, a guest or invitee of a tenant will have the same right of action as a tenant would have had. So, in a jurisdiction where

a tenant can predicate a right of action for personal injury upon the landlord's agreement to make repairs, it is held that an invitee of the tenant has the same right. It also follows, as a general rule, that the guest or invitees of a tenant can have no greater right in such cases than the tenant himself would have had."

This general rule is well supported by judicial authority. See decisions cited in the note found in L. R. A. 1916 F 1087. A number of our own decisions inferentially lend strong support to this view. *Mesher v. Osborne,* 75 Wash. 439, 134 Pac. 1092, 48 L. R. A. (N. S.) 917; *Smith v. Seattle School Dist. No. 1,* 112 Wash. 64, 191 Pac. 858; *Hogan v. Metropolitan Building Co.,* 120 Wash. 82, 206 Pac. 959; *Shrew v. Hartnett,* 121 Wash. 1, 208 Pac. 60; *Uhl Brothers v. Hull,* 130 Wash. 90, 226 Pac. 723; *Bolden v. Independent Order of O. F.,* 133 Wash. 293, 233 Pac. 273. It is true that in those cases there was, for the most part, drawn in question only the problem as to whether or not the right of the invitee could rise superior to the right of his invitor, as against the invitor's landlord; the claimed right resting upon the landlord's negligence. But nevertheless the reasoning of those decisions seems to rest upon the theory that such right of the invitee and the invitor are equal as against the invitor's landlord, under all ordinary circumstances.

[5] Contention is also made that the doctrine of *res ipsa loquitur* has no application here, because respondent was a physical actor in the bringing about of his injuries. This is true in a sense, but, in so far as respondent was a physical actor, he was such actor along the line of the express directions of appellant, and along lines which appellant's express directions told him that it was safe for him to act, viewed apart from respondent's alleged contributory negligence from which the jury has absolved him. Our decision in *Wodnik v. Luna Park Amusement Co.,* 69 Wash.

638, 125 Pac. 941, 42 L. R. A. (N. S.) 1070, comes very near being directly in point in support of the view that respondent being a physical actor, to the extent that he was, does not take from him the benefit of the presumption that appellant's negligence was the proximate cause of his injuries.

The judgment is affirmed.

MACKINTOSH, C. J., TOLMAN, HOLCOMB, and FRENCH, JJ., concur.