MR. JUSTICE SHEEHY,
dissenting and concurring:
I concur in the result as to Mueller Apartments, but dissent from much of what is said with respect to Mueller *339 Apartments, and dissent from the majority holding as to Otis:
I concur with the majority that Mueller Apartments raised no issue of material fact on which it had a right to a jury decision. There can be no conclusion of fact but that on the early morning of August 20, 1981, Mueller was in violation of the state building code, and its counterpart elevator code because of the defective condition of the brass door latch which was a part of the interlock system.
It necessarily follows that I disagree with Justice Weber’s dissent, which finds an issue of material fact in the testimony of Sharon Stephens. The Stephens’ testimony did not raise an issue of fact for the jury to determine. Her testimony is that she went up and down in the elevator on the evening of August 19 to close windows and she also testified generally that the elevator was usually in good working condition. However, her use of the elevator doors was always when the elevator car was at the landing when she opened the door. Nothing in her testimony indicates she ever tried to open the lobby elevator door when the elevator car was not at the landing. From the testimony in the whole record, it is clear that the only person who tested the lobby door when the elevator car was not at the landing was Katherine Cash, and she paid the price. The testimony of Sharon Stephens therefore does not raise an issue of fact.
A person using the elevator in the manner of Sharon Stephens who opened the first floor elevator door when the car was in that landing position would not have discovered that the brass door latch was in fact defective. Opening the door when the car was in position would not have shown that the door also opened if the car was not in the landing position on the first floor.
On that basis, I would hold that res ipsa loquitur applied as far as Mueller Apartments is concerned because nothing the owner or its agents testified to excuses the presumption of negligence in presenting to the public an elevator door which would open without the car being at the landing. In *340 particular, their testimony does not disprove the testimony of expert Marshall that it would have taken years to bend the interlock latch. I dissociate myself from the majority opinion, because I feel res ipsa loquitor applies here.
In another respect, I also remove myself from the majority in its reluctance to declare the violation of the state building code and its accompanying elevator code, as negligence per se.
Under Section 50-60-203, MCA, the Department of Administration was mandated by the legislature to adopt rules relating to the construction and installation of equipment in public buildings whether privately or governmentally owned. The department obeyed that mandate and there are in force in this state specific regulations adopted by the department known as the state building code, which encompasses the state elevator code. A willful violation of the state building code, or a refusal to cure a violation after 30 days notice from the department is a misdemeanor. Section 50-60-110, MCA. It is not jurisprudentially consistent to hold, as we have, that a violation of the motor vehicle code which provides criminal penalties, is negligence per se, but to withhold that same rule of law from violations of the state building code, which was mandated by the legislature, adopted after hearings, and carries with it criminal penalties. No sound reason is advanced by the majority for taking a weaker position in holding that violation of the state building code is only evidence of negligence.
There is a vital difference in classifying a violation of a state building code as merely evidence of negligence from a declaration that it is negligence per se. Under the state building code, the duty of a landowner to provide an interlocking system on his elevator doors is absolute. It is intended to secure to users of passenger elevators the safe operation of doors to elevators and to protect the class of persons which included the plaintiff who would be rightfully using the passenger elevators. When the duty is absolute, it makes no difference that the owner may have been *341 using due care, though due care is argued by Justice Weber in his dissent:
“Liability for an injury resulting from the breach of an absolute statutory duty constituting negligence per se or as a matter of law may not be escaped by proof that the breach was in fact made in the exercise of due care . . 57
Am.Jur.2d. 623, Negligence Section 239.
Of course, the violation of a statutory duty must be proven to be a proximate cause of the eventual injury suffered by the plaintiff, but that is not a problem in this case. If a violation of the state building code is to be merely evidence of negligence, it would be pertinent and proper to allow evidence of efforts on the part of the landowner to use due care, and thus to escape the absolute duty imposed by the building code. This Court has not hesitated to accord to municipalities the recognition that violation of city ordinances constitutes negligence per se (March v. Ayers (1927), 80 Mont. 401-411, 260 P. 702.) Should we not accord the same recognition to building standards which are nationally recognized and adopted, which are penal in nature, and which are designed to protect persons such as the plaintiff in this case?
When a statute, ordinance, or code has been duly adopted by governmental authority for the protection of a class of persons, the standard of conduct of a reasonable person is established by the legislative enactment. The duty of a judge or jury trying the facts, when a violation of that standard is charged, is to determine if in fact the violation occurred. The judge or jury is not called on to make a common-law determination as to whether the violation constitutes negligence. It has become negligence to violate the standard by legislative enactment. Therefore, when the evidence, as here, shows the standard was violated, there is nothing for the judge or jury to decide as to negligence; the standard of conduct of a reasonable person, prescribed by the statute, ordinance or code, cannot be changed by the judge or jury to a lesser or greater duty. If the actual viola *342 tion of the standard is beyond cavil, the jury must be told that negligence has occurred as a matter of law. The remaining question for the jury is whether the negligence is the proximate cause of the injuries claimed because of the violation.
The majority by holding that a violation of the state building code is merely evidence of negligence is implying that other evidence may be produced to show that a violation of the state building code is not negligence. In that position the majority is illogical. If the state building code does not prescribe the standard of conduct for a reasonable person, then, to determine negligence, resort must be had to the common law to determine negligence. Instead of applying the standard of conduct prescribed by the building codes, the standard of reasonable care would be one applied by the court or the jury to the facts of the case as though the building code were absent. I find that possibility anomalous.
I dissent completely from the majority in returning this cause to the District Court for retrial as to Otis Elevator Company. I would affirm the action of the District Court in directing that the jury find Otis negligent both because of violations of the elevator safety code, and under the rule of res ipsa loquitur.
The violation of the elevator safety code is established beyond question. The interlock system was not working on the night that Katherine Cash was injured. Otis Elevator shared the duty with Mueller Apartments to inspect and maintain the elevator so that the accident which occurred to Katherine Cash would not happen.
Here the elevator was under the control of both Otis and Mueller Apartments. In the ordinary course of things, the accident would not have happened if due care had been taken by those in control of it; the plaintiff has no means of explaining how the elevator was not at the floor at which the door opened. In that situation, res ipsa applies. Class v. Young Women’s Christian Association (1934), 47 Ohio *343 App. 128, 191 N.E. 102; Moohr v. Victoria Investment Company (1927), 144 Wash. 387, 258 P. 43; idem., (1928), 146 Wash. 251, 262 P. 643. Exclusive control is not required in Montana. Brothers v. General Motor Corporation (Mont. 1983), [202 Mont. 477.] 658 P.2d 1108, 40 St.Rep. 226; Tompkins v. Northwestern Union Trust Company (Mont. 1982), [197 Mont. 170,] 645 P.2d 402, 39 St.Rep. 845.
The record in this case shows a continuing state of disrepair of the elevator. Not only did the . elevator company make its usual maintenance calls, once a month, but in addition it was called out for emergency repairs or maintenance several times during the year preceding the Cash incident. Both the elevator company and the apartment owner knew that the brass hook could be bent by use and had signs posted on the elevator asking users not to “slam” the elevator doors. Res ipsa raises a presumption that negligence on the part of those in control occurred; nothing produced by the defendants, either Mueller Apartments or Otis Elevator Company, in the trial of this case, excluded their negligence as a proximate cause of Cash’s injuries, except upon the sheerest speculation of someone slamming the door.
I would affirm the District Court in all respects.