[No. 22596-1-I. Division One. September 25, 1989.]

GERTRUDE L. ADAMS, *Appellant,* v. WESTERN HOST, INC., ET AL, *Respondents.*

---

*Shane C. Carew, Newell D. Smith,* and *Mikkelborg, Broz, Wells, Fryer & Yates,* for appellant.

*James P. McGowan,* for respondent Western Host, Inc.

*Lish Whitson, Robert N. Gellatly,* and *Helsell, Fetterman, Martin, Todd & Hokanson,* for respondent United States Elevator Corp.

SCHOLFIELD, J.—Gertrude Adams appeals the trial court order granting summary judgment to defendant, United States Elevator Company. We affirm.

## FACTS

The University Tower (now Meany Tower) Hotel is owned by Western Host, Inc. United States Elevator Company (U.S. Elevator) provides maintenance and repair service for the hotel's two elevators. On May 6, 1985, Adams was injured when the elevator misleveled between 1 foot and 2½ feet above the ground floor. As she stepped from the elevator, she fell forward, striking a nearby pillar.

The U.S. Elevator serviceman, Michael McNeilly, was called to the hotel the same day of Adams' accident. He testified on deposition that he replaced a broken shunt on a relay, and the elevator worked normally thereafter. The service mechanic regularly assigned to the hotel, John Thomas, stated by declaration that he examined the elevator the day after Adams' accident. He found no problem of misleveling. He said there were no "compounding problems due to poor commutation . . ." He also stated there were no problems with the relays associated with slow–down and stop procedures. Thomas asserted that the sole cause of the reported misleveling was the broken shunt, stating that there is no way to anticipate when metal fatigue will cause a shunt to break, and that a broken shunt can cause misleveling.

Kenneth Schmoe, an electrical engineer, was the U.S. Elevator service supervisor of the elevators at the hotel. He asserted by declaration that U.S. Elevator performed regular maintenance on the elevators twice each month and that routine service included checking relays, control contacts, and the elevator's general operation, as well as lubricating, cleaning, changing light bulbs, and changing all worn parts.

He asserted there is no way to anticipate when a particular shunt will break.

There was also testimony from hotel employees that there were no complaints of elevator misleveling prior to Adams' accident.

In opposition to U.S. Elevator's motion for summary judgment, plaintiff submitted the declaration of Vern D. Gill, an electrical engineer from Houston, Texas. The declaration of Mr. Gill stated as follows:

> 5. When an elevator mislevels, the most likely reason is a compounding problem on the motor generator set. All of the causes of a compounding problem are preventable by proper maintenance.
>
> 6. The next most likely reason for the failure of an elevator to level properly is a problem with the relays associated with the process of slowing down and stopping. All of the causes of this problem are preventable by proper maintenance and are the responsibility of a company under a full maintenance contract.

The trial court entered summary judgment dismissing the complaint against U.S. Elevator, ruling specifically that the doctrine of res ipsa loquitur did not apply.

Adams filed a motion for reconsideration and supported it with a second declaration by Mr. Gill, dated April 13, 1988, in which he stated that the action of the elevator indicated that the elevator was improperly adjusted in the "slow–down" and leveling process, which is a result of negligence in maintenance of the elevator. Mr. Gill also stated as follows:

> 7. The particular field–forcing contactor that McNeilly identified gives the elevator mechanism full power to bring the elevator back up to floor level. It is only activated if the elevator has gone through the floor. Even if a shunt was completely disconnected at this field–forcing contactor, it could not be a cause of this elevator stopping above the floor. The more likely causes of the misleveling above the floor are badly pitted contacts or fatigue or other devices, but it would not be the breaking of the shunt on this contactor.

The trial court denied Adams' motion for reconsideration and this appeal timely followed.

A summary judgment motion may be granted under CR 56(c):

> if the pleadings, depositions, . . . and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The court must consider the evidence in the light most favorable to the nonmoving party. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.,* 81 Wn.2d 528, 530, 503 P.2d 108 (1972).

■ When a motion for summary judgment is supported by evidentiary matter, the adverse party may not rest on mere allegations in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *LaPlante v. State,* 85 Wn.2d 154, 158, 531 P.2d 299 (1975). On review of an order granting summary judgment, the appellate court must "engage in the same inquiry as the trial court." *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

### Res Ipsa Loquitur

Adams argues that the evidence before the trial court was sufficient to support application of the doctrine of res ipsa loquitur.

■ *Zukowsky v. Brown,* 79 Wn.2d 586, 488 P.2d 269 (1971) states the elements required for the application of res ipsa loquitur as follows:

> (1) [T]he accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury–causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff.

*Zukowsky,* at 593 (quoting *Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.,* 62 Wn.2d 351, 359, 382 P.2d 518 (1963)).

In *Nopson v. Seattle,* 33 Wn.2d 772, 207 P.2d 674 (1949), the court described the typical factual setting in which the doctrine is applied as follows:

> "The doctrine of *res ipsa loquitur* is based in part upon the theory that the defendant, having the sole and exclusive charge of the agency or instrumentality which caused the injury, knows the cause of the accident, or injurious occurrence, or has the best opportunity of ascertaining it, and should, therefore, be required to produce the evidence in explanation thereof . . .
>
> ". . . Whether or not the doctrine is applicable in a specific instance depends upon the peculiar facts and circumstances of the individual case.

*Nopson*, at 785 (quoting *Morner v. Union Pac. R.R.*, 31 Wn.2d 282, 196 P.2d 744 (1948)).

In *Gardner v. Seymour*, 27 Wn.2d 802, 812, 180 P.2d 564 (1947), the court quoted from *Quass v. Milwaukee Gas Light Co.*, 168 Wis. 575, 170 N.W. 942 (1919), as follows:

> ". . . while the inferences allowed by the rule or doctrine of *res ipsa loquitur* constitute such proof, it is only where the circumstances leave no room for a different presumption that the maxim applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it cannot be invoked.

This is not a case of an unexplained accident of the type where res ipsa loquitur has been applied. Here, U.S. Elevator provided substantial evidence of the cause of the misleveling and that it could occur without negligence on the part of U.S. Elevator. This is not a case where the malfunction is so unusual that we can say it does not ordinarily occur in the absence of negligence. Elevators are mechanical devices of some complexity. Materials can wear out or break without negligence being involved. If Adams had introduced competent evidence of negligence by U.S. Elevator, the factual issues so joined would be resolved by the trier of fact. Under these circumstances, the doctrine of res ipsa loquitur is not applicable.

Adams cites and relies upon *Moohr v. Victoria Inv. Co.*, 144 Wash. 387, 258 P. 43 (1927), an elevator case in which the doctrine was applied. In *Moohr*, a 12–year–old boy fell down an elevator shaft when he stepped through the open doorway from the hall. The boy had left the hallway door open, expecting to return to the elevator in a short time. Posted instructions advised that the elevator could not be

moved with the hallway door open. The court concluded that the indication that the elevator had moved with the hallway door open placed the burden on the defendant to explain how this occurred without the defendant's negligence. The defendant offered no explanation.

The case at bar is readily distinguishable from *Moohr* by the fact that U.S. Elevator produced substantial evidence explaining how the misleveling occurred without negligence on its part.

### SUMMARY JUDGMENT

Although Adams failed to show that the doctrine of res ipsa loquitur was applicable, she could have survived a summary judgment motion had she put forth a prima facie case of negligence. In an effort to do so, she relied upon the declaration of Vern D. Gill, dated December 23, 1987.

Other than his own experience and expertise as an electrical engineer, Mr. Gill provided no basis for his knowledge of the facts of this case other than his review of the affidavit and deposition of Kenneth Schmoe.

Mr. Gill did not state an opinion as to the cause of the misleveling. He stated only a theoretical likelihood as to the most likely cause and the next most likely. This is not sufficiently specific to rebut the showing made by U.S. Elevator that the cause of the misleveling was a broken shunt and that there was no way to anticipate when metal fatigue will cause a shunt to break. Thus, there was no factual issue raised on the claim of negligent maintenance.

To rebut a properly supported summary judgment motion, the nonmoving party must set forth specific facts showing a genuine issue for trial. Gill's declaration did not address U.S. Elevator's argument that the broken shunt was responsible for misleveling. In fact, Gill's declaration did not discuss the specific facts of this case. Because Adams failed to make a prima facie case of negligence by alleging specific facts as required by CR 56(c), summary judgment was proper.

MOTION FOR RECONSIDERATION PROPERLY DENIED

Adams filed a second declaration by Gill in support of her motion for reconsideration of the order granting summary judgment.

CR 59(a) provides in pertinent part:

**Grounds for a New Trial or Reconsideration.** The verdict or other decision may be vacated and a new trial granted to all or any of the parties and on all or part of the issues when such issues are clearly and fairly separable and distinct, on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such parties:

. . . .

(4) Newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial[.]

■ Adams' contention that she was unable to obtain Gill's second declaration in the time between receipt by her attorney of U.S. Elevator's opposing memorandum and the date of the hearing does not satisfy the definition of "newly discovered" evidence. Gill's testimony, as set forth in his second declaration, was available to Adams at the time Gill's first declaration was presented to the court. The realization that Gill's first declaration was insufficient does not qualify the second declaration as newly discovered evidence. The motion for reconsideration was properly rejected by the trial court.

Judgment affirmed.

GROSSE, A.C.J., and DEIERLEIN, J. Pro Tem., concur.