FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 MAR 10 AM 10: 42



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JEANNE PASCAL and DALLAS SWANK, husband and wife, | ) ) ) | No. 69839-7-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) | |
| v. | ) ) | |
| WH PARK PLACE MEZZ, LLC; and WH PARK PLACE, LLC; | ) ) ) | |
| Respondents, | ) ) | |
| | ) | UNPUBLISHED OPINION |
| WASHINGTON REAL ESTATE HOLDINGS LLC; TRANSWESTERN PARK PLACE SEATTLE, LLC; TRANSWESTERN INVESTMENT COMPANY, LLC; TRANSWESTERN PARK PLACE SEATTLE HOLDINGS, LLC; WASHINGTON HOLDINGS STRUCTURED FINANCE, LLC; and FUJITEC AMERICA, INC., | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | FILED: March 10, 2014 |

SCHINDLER, J. — On January 21, 2010, Jeanne Pascal fell while stepping into the garage passenger elevator in the Park Place Building. Pascal filed a personal injury lawsuit against the owner of the building WH Park Place Mezz LLC (Park Place) and the elevator maintenance company Fujitec America Inc. Pascal appeals summary judgment dismissal of her claims against Park Place. Because there is no evidence that

Park Place breached the duty of care or that it knew or should have known of a dangerous condition on January 21, 2010, we affirm.

FACTS

In January 2010, WH Park Place Mezz LLC (Park Place) owned the Park Place Building at 1200 Sixth Avenue (the Building).[1] The Building has eight elevators including one garage passenger elevator.

Park Place contracted with Fujitec America Inc. (Fujitec) to service the elevators in the Building.[2] The contract required Fujitec to perform monthly preventative maintenance on the elevators and respond to all service calls. The contract also required Fujitec to maintain elevator leveling accuracy within one-quarter inch.

Park Place employed a property management company, Wright Runstad, to manage the Building, including the elevator contract with Fujitec. Wright Runstad was responsible for scheduling routine maintenance of the elevators, taking tenant complaints, writing up any incident or accident reports related to the elevators, and contacting Fujitec for emergency repairs.

On January 21, 2010 while stepping into the garage passenger elevator, Jeanne Pascal tripped and fell forward, dislocating her shoulder and tearing her rotator cuffs.

Pascal and her spouse Dallas Swank (collectively Pascal) filed a personal injury lawsuit against Park Place and Fujitec.[3] Pascal alleged her injuries were "directly and proximately caused by the negligence of Defendants and/or agents of Defendants."

---

[1] The members of Park Place are Transwestern Park Place Seattle Holdings LLC and WH Structure Finance LLC. WH Structure Finance LLC is a subsidiary of Washington Real Estate Holdings LLC.

[2] Fujitec initially contracted with a different owner but was still servicing the Building in January 2010 when Park Place assumed ownership.

[3] In July 2012, Pascal dismissed the five other defendants she named in her initial complaint.

2

Park Place filed a motion for summary judgment dismissal. Park Place argued there was no evidence that Park Place knew or should have known of a dangerous condition. In support, Park Place presented the deposition testimony of Fujitec employee Chris Love and Wright Runstad employee Travis Smith. Park Place also presented Pascal's deposition testimony. Fujitec joined in the motion for summary judgment filed by Park Place.

Fujitec service mechanic Chris Love was responsible for inspecting and maintaining the elevators. Love performed the monthly maintenance inspection of the elevators on January 13, 2010. Love testified that he completed all required monthly maintenance tasks during each of his inspections. Love explained that any unchecked boxes in the Fujitec maintenance record for the January 13 inspection meant that those tasks were not necessary.

Love testified that he did not observe a misleveling problem in the garage passenger elevator during any of the monthly inspections he performed between September 2009 and January 13, 2010. Love described "misleveling" as "an elevator either being above or below floor level." Love said misleveling can occur "from clipping a door lock" or "from [a] safety circuit being broken, and that's pretty much it."

Love testified that Fujitec did not receive any complaints of misleveling problems with the garage passenger elevator. Love testified that between September 2009 and January 2010, there were only two service calls in October 2009 concerning the garage passenger elevator. Love testified the two calls in October concerned replacing the talon belt on the garage passenger elevator and Fujitec performed the necessary repairs.

Travis Smith worked for Wright Runstad as the chief engineer of the Building. Smith said that Wright Runstad had no notice of any misleveling problems with the garage passenger elevator before Pascal's fall on January 21. Smith testified that he could not "recall any complaints" about the garage passenger elevator between September 2009 and January 21, 2010 and Fujitec did not report any malfunction of the garage passenger elevator.

During her deposition, Pascal testified that as she entered the elevator, her foot "clipped the elevator floor and it pitched me forward and I fell." Pascal said that she "assumed" her foot clipped the elevator floor because "the garage floor is concrete and stationary. The only thing that can possibly elevate or not elevate is the elevator." Pascal testified that she did not observe the garage passenger elevator misleveling on the day of her accident. Pascal said she did not remember if she ever noticed the garage passenger elevator misleveling but did notice "some of the elevators did not level from time to time. If I saw it I walked over it."

In opposition to the motion for summary judgment, Pascal argued there were issues of material fact as to whether as a common carrier Park Place "exhibited the highest degree of care possible consistent with the practical operation of its elevators," and "whether Fujitec used the required degree of care in maintaining the Park Place elevators." Pascal also argued the summary judgment motion was "premature in light of remaining discovery. In particular handwritten logbooks maintained by building security guards" and outstanding depositions "of certain key Fujitec personnel familiar with software operating the elevator systems." Nonetheless, Pascal did not ask for a continuance. Instead, Pascal asserted there was "sufficient" information from the

"discovery already made" to defeat summary judgment.

In opposition, Pascal submitted a declaration and declarations from individuals who had previously or currently worked in the Building. Pascal also submitted the declaration of an elevator expert and documents produced during discovery.

Michael Graeber, Bogdan Wojnicz, Kevin McDermott, Eileen Livingstone, and Jennifer Eason each stated in their declarations that they observed misleveling of the elevators in the Building, but did not testify that they observed any misleveling in the garage passenger elevator between January 13 and January 21, 2010.

Graeber worked as a security guard at the Building between October 2001 and April 2008. Graber said that before leaving in April 2008, he was "personally aware, and was told by building tenants that the Park Place building elevators, including the garage elevator stopped above or below the level of the floors on occasion." Graeber does not identify when he observed misleveling or when tenants complained to him about misleveling before he left in April 2008.

Wojnicz worked in the Building until June 2008. Wojnicz recalled at least a dozen times when "the garage elevator stopped high or low of the floor." McDermott worked in the Building from 1990 to 2009 and Livingstone worked in the Building from December 1982 to December 2010. Both McDermott and Livingstone said they observed elevators in the Building misleveling but do not identify which elevator or when they observed misleveling. Eason has worked in the Building since January 2007. Eason states that she observed "the elevators" in the Building mislevel but does not identify when she made those observations or which elevators were misleveling.

Barbara Lither has worked in the Building since November 1978. Lither testified

that on February 4, 14 days after Pascal's accident, the garage passenger elevator was misleveling approximately one-half to three-quarters of an inch. Lither took photographs of the elevator misleveling. Lither also testified that she "watched the elevator doors open and close at least twice" and noticed that "the floor did not misalign every time." Pascal states in her declaration that on January 21, the garage passenger elevator "misleveled, creating a trip hazard, which I did not see."

Pascal also submitted an e-mail from Park Place Security, a 2009 work order to Fujitec, and the records from the maintenance inspection in January 2010. The May 12, 2009 e-mail asks Fujitec to "check on reports of intermittent leveling problems — no specifics as to floor or direction." The October 15, 2009 work order to Fujitec states that the "day porter reports garage car not leveling on 1st Floor."

In his declaration, elevator expert Charles Buckman relies on Lither's declaration and the fact that Pascal tripped to conclude that the garage passenger elevator "probably" misleveled by more than one-half inch because misleveling of less than one-half inch would be unlikely to trip someone. Based on the assumption that the elevator "was at times 3/4 inch misleveled," Buckman then concludes "maintenance of that elevator was inadequate. With proper maintenance the elevator should not have been more than the 1/4 inch out of alignment with the floor." Buckman also states misleveling is the most common cause of elevator passenger injury, and Park Place was negligent in failing to "aggressively check" for the source of the misleveling problems and following up on reports of misleveling.

In reply, Park Place reiterated there was no evidence of misleveling of the garage passenger elevator between the date Fujitec inspected and performed maintenance on

January 13 and the date Pascal fell on January 21. Park Place also asserted there was no evidence that Park Place had notice of misleveling from January 13 to January 21, and it took reasonably foreseeable steps by contracting with Wright Runstad and Fujitec "to assist in the fulfillment of its responsibilities" as a common carrier.

The court granted the motion for summary judgment and entered an order dismissing the claims against Park Place and Fujitec.[4] The court denied Pascal's motion for reconsideration.

ANALYSIS

Pascal argues the court erred in dismissing the claims against Park Place on summary judgment because there are genuine issues of material fact on breach of the duty of care.

We review summary judgment de novo. Tiffany Family Trust Corp. v. City of Kent, 155 Wn.2d 225, 230, 119 P.3d 325 (2005). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. CR 56(c).

A defendant can move for summary judgment by " 'showing . . . there is an absence of evidence to support the [plaintiff]'s case.' " Young v. Key Pharm., Inc., 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

If the defendant shows an absence of evidence to establish the plaintiff's case, the burden then shifts to the plaintiff to set forth specific facts showing a genuine issue of material fact for trial. Young, 112 Wn.2d at 225. As the nonmoving party, the plaintiff may not rely on speculation or "mere allegations, denials, opinions, or

---

[4] Pascal does not appeal the summary judgment dismissal of her claims against Fujitec.

7

conclusory statements" to establish a genuine issue of material fact. Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wn. App. 736, 744, 87 P.3d 774 (2004) (citing Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355, 359, 753 P.2d 517 (1988)).

While we construe all evidence and reasonable inferences in the light most favorable to the nonmoving party, if the plaintiff " 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' " summary judgment is proper. Young, 112 Wn.2d at 225 (quoting Celotex, 477 U.S. at 322). If the plaintiff fails to carry its burden, " 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.' " Young, 112 Wn.2d at 225 (quoting Celotex, 477 U.S. at 322-23).

As an elevator operator, Park Place is a common carrier and must take reasonably foreseeable precautions on behalf of its passengers. Brown v. Crescent Stores, Inc., 54 Wn. App. 861, 863-64, 776 P.2d 705 (1989). A common carrier owes "a duty of the highest care for its passengers' safety compatible with the practical operation of its business." Brown, 54 Wn. App. at 863. But the standard of care owed by a common carrier is not one of strict liability. Walker v. King County Metro, 126 Wn. App. 904, 908, 109 P.3d 836 (2005). A common carrier is not the insurer of its passengers' safety, and negligence should not be presumed or inferred from the mere happening of an accident. Tortes v. King County, 119 Wn. App. 1, 7-8, 84 P.3d 252 (2003).

An elevator operator also has specific statutory duties, including a duty to

maintain floor leveling accuracy within one-half inch. WAC 296-96-00650.[5] Breach of a duty imposed by statute or administrative rule may be considered as evidence of negligence. RCW 5.40.050.

Pascal relies on Brown to argue there are material issues of fact as to whether Park Place met the standard of care for a common carrier. In Brown, an elderly woman was injured when she was hit by an elevator door in a department store. Brown, 54 Wn. App. at 863.

The store moved for summary judgment dismissal of the suit, arguing the automatic elevators complied with safety standards and it had no duty to provide an alternative elevator for elderly passengers. Brown, 54 Wn. App. at 868. In opposition, the plaintiff presented evidence that the department store knew about the "age, size and physical condition" of its elevator passengers yet regularly invited elderly customers for luncheons. Brown, 54 Wn. App. at 868. The plaintiff also presented evidence that the store knew other elderly passengers had been injured by the automatic elevator doors and a safer manual elevator was available for use that day. Brown, 54 Wn. App. at 868-69. The trial court granted summary judgment dismissal of the lawsuit. Brown, 54 Wn. App. at 862-63. We reversed on the grounds that the facts "raise a question whether [the store] should have reasonably anticipated an accident might occur and was therefore obligated to take precautionary measures." Brown, 54 Wn. App. at 869.

---

[5] RCW 70.87.030 provides that the Washington State Department of Labor and Industries (Department) "shall adopt rules governing the mechanical and electrical operation, acceptance tests, conveyance work, operation, and inspection that are necessary and appropriate and shall also adopt minimum standards governing existing installations." The statute directs the Department to consider the American Society of Mechanical Engineers Safety Code for Elevators, Dumbwaiters, and Escalators (ASME). RCW 70.87.030. The Washington Administrative Code (WAC) states that the Department has adopted the ASME A17.1-2004, Rule 2.26.11(a) and (b). WAC 296-96-00650. ASME Rule 2.26.11 requires floor leveling accuracy within one-half inch.

Here, unlike in Brown, there is no evidence of breach of the duty of care or that Park Place had notice of any misleveling problems in the garage passenger elevator between the Fujitec inspection on January 13 and Pascal's fall on January 21. Park Place met its duty to take reasonably foreseeable precautions on behalf of its passengers by contracting with Wright Runstad and Fujitec to maintain the elevators. Fujitec service technician Love testified that he performed monthly maintenance on the garage passenger elevator from September 2009 to January 13, 2010. Love also testified that he did not observe any misleveling problems in the elevator nor did he receive any complaints of misleveling between September 2009 and January 13, 2010.

Pascal did not present any evidence showing misleveling of the garage passenger elevator when Fujitec performed the monthly maintenance inspection of the elevators on January 13. None of the declarations Pascal submitted report any misleveling in January 2010, and Pascal admitted in her deposition that she did not observe any misleveling the day she fell. Lither's testimony that she observed misleveling of the garage passenger elevator on February 4 does not support an inference that the elevator was misleveling when Pascal fell on January 21.

Pascal cites Murphy v. Montgomery Elevator Co., 65 Wn. App. 112, 828 P.2d 584 (1992), to argue that scheduling once monthly maintenance inspections does not meet the standard of care for a common carrier. But Murphy concerned the standard of care required by an elevator maintenance company and does not address the standard of care for a common carrier. Murphy, 65 Wn. App. at 116-18.

Pascal also argues the Fujitec inspection and maintenance records create a material issue of fact as to whether Love completed all required maintenance during the

inspection on January 13. Pascal points to a blank box on the "PM Ticket" to argue Love did not complete all of the required tasks during his January inspection. Pascal also points to the "Ticket Summary By Single Location" that notes, "PM System: January, TASKS: INCOMPLETE." But during his deposition, Love was asked only one question related to these two documents, "Was there anything that you should have done on that call that you did not do?" In response, Love answered that he performed all required tasks on January 13 and "any of the blank boxes are tasks that are not required for that month."

Pascal contends that an October 15, 2009 work order describing a leveling problem with the "garage car" creates a material issue of fact. Pascal asserts there is no evidence showing this report of misleveling was investigated or solved. But the unrebutted evidence establishes that Fujitec made only two service calls in October 2009 regarding the garage passenger elevator and neither service call involved misleveling.

Further, contrary to Pascal's assertion, Buckman's testimony does not create a material issue of fact. Buckman bases his conclusion that Park Place breached the duty of care on the premise that elevators do not mislevel without some negligence. But Buckman acknowledges the elevator safety codes recognize some degree of misleveling cannot be eliminated and require floor leveling accuracy only within one-half inch. In Adams v. Western Host, Inc., 55 Wn. App. 601, 779 P.2d 281 (1989), the court addressed whether misleveling constitutes the kind of malfunction that may occur even in the absence of negligence. Adams, 55 Wn. App. at 606.

11

In <u>Adams</u>, a passenger was injured when a hotel elevator misleveled between one and two and one-half feet. <u>Adams</u>, 55 Wn. App. at 603. The elevator company presented evidence that it performed regular maintenance on the elevators twice each month and there were no complaints of elevator misleveling prior to the accident. <u>Adams</u>, 55 Wn. App. at 603. The elevator company also showed that the misleveling was caused by a broken shunt and "there is no way to anticipate when metal fatigue will cause a shunt to break." <u>Adams</u>, 55 Wn. App. at 603.

We recognized that "[e]levators are mechanical devices of some complexity. Materials can wear out or break without negligence being involved," and affirmed summary judgment dismissal because the plaintiff's expert "did not state an opinion as to the cause of the misleveling" and therefore failed to rebut the evidence showing that the misleveling was not caused by negligence. <u>Adams</u>, 55 Wn. App. at 606-07.

Here, as in <u>Adams</u>, Pascal's expert did not state an opinion as to why the elevator may have misleveled or how it is attributable to any negligence by Park Place. Pascal also did not rebut the evidence that Park Place took reasonably foreseeable precautions in maintaining its elevators. We conclude the court did not err in dismissing the claims against Park Place on summary judgment.

Denial of Motion for Reconsideration

Pascal claims the court erred in denying her motion for reconsideration because of the outstanding discovery requests. We review the trial court's order denying a motion for reconsideration for an abuse of discretion. <u>Go2Net, Inc. v. C I Host, Inc.</u>, 115 Wn. App. 73, 88, 60 P.3d 1245 (2003). A trial court abuses its discretion when its

decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Go2Net, 115 Wn. App at 88.

Pascal contends the court erred in denying her motion for reconsideration because there was an outstanding request for production of the Building security guard logbooks containing elevator complaints, and she did not have the opportunity to depose the Fujitec personnel familiar with the software running the garage elevator. But the record establishes Pascal knew about the security guard logbooks and the need to depose the Fujitec software personnel before the court ruled on summary judgment.

In opposition to summary judgment, Pascal stated that the motion was "premature in light of remaining discovery," in particular, the logbooks and the need to depose Fujitec software personnel, but Pascal did not ask the court for a continuance. Instead, Pascal asserted the summary judgment motion could be decided without considering additional evidence—"Nevertheless, discovery already made has revealed information sufficient to defeat summary judgment." The trial court did not abuse its discretion in denying Pascal's motion for reconsideration.

We affirm summary judgment dismissal of the claims against Park Place.

WE CONCUR:

13